113 Cal.Rptr.2d 376 (2001)
93 Cal.App.4th 846
Donald J. FLORES et al., Plaintiffs and Respondents,
v.
TRANSAMERICA HOMEFIRST, INC., Defendant and Appellant.
No. A093409.
Court of Appeal, First District, Division Five.
October 12, 2001.
Review Denied January 16, 2002.
*378 Counsel for Defendant and Appellant: James H. Fleming, Walnut Creek, Edward Romero, San Ramon, Fleming & Phillips, Walnut Creek.
Counsel for Plaintiffs and Respondents: Richard P. Murray, San Rafael, H. Shaina Goldman, Freitas, McCarthy, MacMahon & Keating, San Rafael.
*377 STEVENS, J.
Plaintiffs Donald J. and Helen Flores, husband and wife, are senior citizens who obtained a reverse mortgage on their home from defendant Transamerica Home-First, Inc., (HomeFirst). After plaintiffs filed suit against HomeFirst for unfair business practices and other tortious conduct, HomeFirst petitioned to compel arbitration pursuant to arbitration clauses contained in the loan agreement and deed of trust signed by plaintiffs. The trial court denied the petition, finding the arbitration clauses to be unconscionable and unenforceable. HomeFirst appeals from that ruling, which we now affirm.[1]

I. BACKGROUND FACTS

In February 1997, plaintiffs, then ages 80 and 76, executed a "Loan Agreement and Note" and a deed of trust in order to obtain a reverse mortgage on their home from HomeFirst.[2] Under the reverse mortgage plan, plaintiffs received a lump sum plus monthly payments from Home-First until July 1999, when plaintiffs sold their home. In connection with the sale, plaintiffs received a final loan payoff demand from HomeFirst and were shocked to discover that they owed not only the $72,018 in principal they had borrowed plus interest on that principal but also another $75,000 in "contingent interest" which represented 50 percent of the market value appreciation over the two-year loan period. Plaintiffs paid the payoff demand under protest and then filed suit claiming unfair business practices, violations of the Consumer Legal Remedies Act (Civ.Code § 1750 et seq.), unconscionability, fraud, unlawful prepayment penalties, and bad faith. HomeFirst removed the action to federal court on the ground of federal preemption, but the federal court remanded the matter back to state court.
The loan agreement is 14 pages long, and an arbitration clause appears on page 11 in section 20. The first paragraph appears in bold face, enlarged type surrounded by a border:
"ARBITRATION. Any controversy or claim arising out of or relating to this *379 Loan Agreement, the Security Instrument, or any other document relating to the Loan, the breach of any of them or the default under any of them, other than an action or proceeding to foreclose on the Property pursuant to the Security Instrument, will be settled by binding arbitration under the jurisdiction of the American Arbitration Association in accordance with its Commercial Arbitration Rules. The arbitration will be conducted in the County of San Francisco or the County of Los Angeles, whichever is closer to the Property Address, unless you and I agree on a different location. Judgment upon any award rendered by the arbitrator may be entered in any appropriate court. Such arbitration may not, however, without your consent, delay or adversely affect your ability to exercise any of the remedies available to you under this Loan Agreement or under the Security Instrument. Your pursuit of such remedies will not constitute a waiver by you of your rights to submit any controversy or claim to arbitration. No arbitration conducted hereunder shall be consolidated or combined with any other arbitration absent Lender's express written consent."
The second paragraph is not in bold face type and does not appear within a border:
"Notwithstanding anything that may be contained in this Section to the contrary, this Section does not limit your right to foreclose against the Property (whether judicially or non-judicially by exercising your right of sale or otherwise), to exercise self-help remedies such as set-off, or to obtain injunctive relief for the appointment of a receiver from any appropriate court, whether before, during or after any arbitration."
Throughout these quoted provisions, the terms "you," "your," and "Lender" refer to HomeFirst. "I" refers to the borrower.[3]
Based on these provisions, HomeFirst petitioned to compel arbitration. Plaintiffs opposed the petition on the ground that the underlying loan documents were unconscionable. The trial court ruled that the arbitration provisions within the loan documents were unconscionable pursuant to the then-newly filed decision of the Supreme Court in Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Armendariz). HomeFirst moved for reconsideration on the ground that the parties had not been given an opportunity to brief the question whether justification exists for the lack of mutuality in the arbitration agreement. The trial court then granted reconsideration but ruled that HomeFirst had failed to demonstrate a justification, and the court again denied the petition to compel arbitration.

II. DISCUSSION

A written agreement to arbitrate is enforceable, "save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., §§ 1281, 1281.2, subd. (b).)[4] As is true for any contract, an arbitration provision may be held unenforceable if it is unconscionable.[5] (Civ. *380 Code, § 1670.5; e.g., Armendariz, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 [in employment application]; Graham v. Scissor-Tail, Inc. (1981) 28 Cal.3d 807, 817, 171 Cal.Rptr. 604, 623 P.2d 165[in a music performance contract] (Graham); Kinney v. United HealthCare Services, Inc. (1999) 70 Cal.App.4th 1322, 1328, 83 Cal.Rptr.2d 348 [in an employee handbook] (Kinney); Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519,1533-1534, 60 Cal.Rptr.2d 138 [in an employment contract] (Stirlen).)

A. STANDARD OF REVIEW
Unconscionability is ultimately a question of law for the court. (Civ.Code, § 1670.5; Stirlen, supra, 51 Cal.App.4th at p. 1527, 60 Cal.Rptr.2d 138; Olsen v. Breeze, Inc. (1996) 48 Cal.App.4th 608, 621, 55 Cal.Rptr.2d 818; American Software, Inc. v. Ali (1996) 46 Cal.App.4th 1386, 1391, 54 Cal.Rptr.2d 477 (American Software); Patterson v. ITT Consumer Financial Corp. (1993) 14 Cal.App.4th 1659, 1663, 18 Cal.Rptr.2d 563 (Patterson).) As we recently explained: "It is true that numerous factual inquiries bear upon that question, e.g., the business conditions under which the contract was formed, and to the extent there are conflicts in the evidence or in the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the judgment. [Citations.] In the present case, however, the extrinsic evidence was undisputed. Consequently, we review the contract de novo to determine unconscionability. [Citations.]" (Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc. (2001) 89 Cal.App.4th 1042, 1055,107 Cal.Rptr.2d 645.)

B. COLLATERAL ESTOPPEL
Plaintiffs argue that HomeFirst is collaterally estopped to deny the unconscionability of the arbitration provisions by virtue of the judgment, affirmed by us on appeal, in San Mateo County Public Guardian v. Transamerica HomeFirst, Inc., et al. (Jan. 31, 2001, A090060 [nonpub. opn.]) (Reverse Mortgage Cases). We disagree. One who was not a party to a former judgment may indeed invoke the doctrine of collateral estoppel against one who was a party to the former judgment. (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 408, pp. 983-984.) However, the doctrine of collateral estoppel bars litigation of an issue already decided by a prior judgment only if the issue previously decided is identical to the one which is sought to be relitigated. (Amador v. Unemployment Ins. Appeals Bd. (1984) 35 Cal.3d 671, 684, 200 Cal.Rptr. 298, 677 P.2d 224.) "[I]f the very same facts and no others are involved in the second case, ... the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change. But if the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus, the second proceeding may involve an instrument or transaction identical with, but in a form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue. It may then reach a different result or, if consistency in decision is considered *381 just and desirable, reliance may be placed upon the ordinary rule of stare decisis. Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." (Commissioner v. Sunnen (1948) 333 U.S. 591, 601-602, 68 S.Ct. 715, 92 L.Ed. 898 [income tax for different years], italics and fn. omitted; accord Younger v. Jensen (1980) 26 Cal.3d 397, 412, 161 Cal.Rptr. 905, 605 P.2d 813 [subpoena served on different company].)
Although the legal principles applicable to the issues in the present case are the same as those underlying the judgment in the Reverse Mortgage Cases, the facts are not. The loan agreement and deed of trust involved here were signed by different parties under different circumstances. Despite virtually identical language, the documents and the loan transactions in the Reverse Mortgage Cases are separate from those involved here. In light of the obvious similarity of the circumstances, we might have relied upon our opinion in the Reverse Mortgage Cases under the doctrine of stare decisis. Rule 977(a) of the California Rules of Court, however, precludes our reliance on an unpublished decision. Consequently, we undertake an independent examination of the legal issues raised here.

C. UNCONSCIONABILITY
In A & M Produce Co. v. FMC Corp. (1982) 135 Cal.App.3d 473, 186 Cal. Rptr. 114 (A & M Produce), the court outlined an analytic framework for determining whether a particular contractual provision is unconscionable, explaining that unconscionability has both a procedural and a substantive element. (Id. at p. 486, 186 Cal.Rptr. 114.) The procedural element focuses on "oppression" or "surprise." (Id. at pp. 486, 491, 186 Cal.Rptr. 114.) Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them. (Id. at p. 486, 186 Cal.Rptr. 114.) The substantive element has to do with the effects of the contractual terms and whether they are overly harsh or one-sided. (Id. at p. 487, 186 Cal.Rptr. 114; see also Armendariz, supra, 24 Cal.4th at pp. 114, 118-119, 99 Cal.Rptr.2d 745, 6 P.3d 669; Stirlen, supra, 51 Cal.App.4th at p. 1532, 60 Cal.Rptr.2d 138.)[6]
Analysis of unconscionability begins with an inquiry into whether the contract was a contract of adhesioni.e., a *382 standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms. (Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal. Rptr.2d 745, 6 P.3d 669; Graham, supra, 28 Cal.3d at p. 817, 171 Cal.Rptr. 604, 623 P.2d 165; see generally, Neal v. State Farm Ins. Cos. (1961) 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781.) A finding of a contract of adhesion is essentially a finding of procedural unconscionability. (See Stirlen, supra, 51 Cal.App.4th at pp. 1533-1534, 60 Cal.Rptr.2d 138; Kinney, supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348.)
In the present case, the arbitration clauses contained in the loan agreement and deed of trust constituted a contract of adhesion. HomeFirst unquestionably had superior bargaining strength in that it presented its preprinted documents, cast in generic language, to plaintiffs for signature. Plaintiffs were offered no opportunity to negotiate. The "IMPORTANT INFORMATION FOR ALL BORROWERS" which plaintiffs received indicated that in order to establish the reverse mortgage plaintiffs were required to sign the standardized loan documents. Plaintiffs were never informed that the documents, much less the arbitration provisions, were negotiable. Moreover, according to plaintiffs' son, HomeFirst's representative told plaintiffs that HomeFirst was the only company in California offering reverse mortgages, thereby indicating that plaintiffs had no real choice of alternate lenders.
In sum, the undisputed facts indicate that the arbitration agreement was imposed upon plaintiffs on a "take it or leave it" basis. The arbitration agreement was a contract of adhesion and thereby procedurally unconscionable.
As already noted, substantive unconscionability focuses on the one-sidedness of the contract terms. In the context of an arbitration agreement, the agreement is unconscionable unless there is a "`modicum of bilaterality'" in the arbitration remedy. (Armendariz, supra, 24 Cal.4th at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669; see also Kinney, supra, 70 Cal. App.4th at p. 1332, 83 Cal.Rptr.2d 348; Stirlen, supra, 51 Cal.App.4th at p. 1541, 60 Cal.Rptr.2d 138.) "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, ... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (Armendariz, supra, at p. 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
Here, we agree with the trial court's conclusion that the arbitration provisions do not display a modicum of bilaterality. Under the loan agreement plaintiffs' principal obligation is to repay the sums advanced with interest. Plaintiffs' indebtedness is non-recourse, secured solely by the deed of trust. In the event of a breach by plaintiffs, HomeFirst's remedy is mandatory prepayment, and if plaintiffs do not repay the loan, then HomeFirst is allowed to sell the property. Pursuant to section 20 of the loan agreement and the deed of trust, while plaintiffs are required to arbitrate "[a]ny controversy" arising out of the loan agreement or deed of trust, HomeFirst is allowed to proceed by judicial or non-judicial foreclosure, by self-help remedies such as set-off, and by injunctive relief to obtain appointment of a receiver.[7]
*383 Moreover, the loan documents allow HomeFirst to proceed with foreclosure despite the pendency of disputes brought to arbitration. The arbitration clauses provide that arbitration "may not ... without [HomeFirst's] consent, delay or adversely affect [HomeFirst's] ability to exercise any of the remedies available to [HomeFirst] under [the loan agreement or deed of trust]." And finally, we note that section 19 of the deed of trust declares that "[a]ll of [HomeFirst's] remedies under this Security Agreement are cumulative to any other right or remedy under this Security Instrument or the Loan Agreement, or which is afforded by law or equity, and may be exercised concurrently, independently, or successively." (Italics added.) Realistically, then, the mandatory arbitration provisions apply to claims of the borrower against HomeFirst but not vice-versa. We conclude that this unilateral obligation to arbitrate is so one-sided as to be substantively unconscionable.

D. JUSTIFICATION
In Armendariz, supra, 24 Cal.4th at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669, the Supreme Court clarified that not all lack of mutuality in an adhesive arbitration agreement is invalid. Rather, quoting from Stirlen, supra, 51 Cal.App.4th at p. 1536, 60 Cal.Rptr.2d 138, the court explained that "a contract can provide a `margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." Thus, if the stronger party has a justification "grounded in something other than the [stronger party's] desire to maximize its advantage based on the perceived superiority of the judicial forum," then the arbitration agreement would not be unconscionable. (Armendariz, supra, at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Conversely, a one-sided arbitration agreement that imposes arbitration on the weaker party while providing a choice of forums for the stronger party is unfair and unconscionable "without at least some reasonable justification for such one-sidedness based on `business realities.'" (Id. at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669.) However, unless the "business realities" that create the special need for such an advantage are explained in the contract itself, they must be factually established. (Ibid.)
HomeFirst argued below and reiterates on appeal that business realities dictate that it be allowed to foreclose against the property as a legitimate commercial means of ensuring its security for the non-recourse loan. We are not persuaded.
As a practical matter, by reserving to itself the remedy of foreclosure, Home-First has assured the availability of the only remedy it is likely to need. In any event, foreclosure is not the only remedy reserved to HomeFirst from the scope of arbitration. Rather, HomeFirst is entitled to exercise any rights or remedies "afforded by law or equity" while plaintiffs are confined to arbitration for all purposes. Moreover, by the terms of the arbitration agreement, HomeFirst is allowed to proceed with its own remedies despite the pendency of any claims in arbitration.[8] The clear implication is that HomeFirst has attempted to maximize its advantage by avoiding arbitration of its own claims.

*384 E. PREEMPTION UNDER FEDERAL ARBITRATION ACT
HomeFirst maintains that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (hereafter FAA) applies and precludes a determination under California law that the arbitration agreement is unenforceable. HomeFirst relies on the principle that the FAA preempts state laws that single out and thwart arbitration provisions. (Doctor's Associates, Inc. v. Casarotto (1996) 517 U.S. 681, 687-688,116 S.Ct. 1652, 134 L.Ed.2d 902 (Doctor's Associates).) The argument is unsound.
Section 2 of the FAA contains language virtually identical to that of section 1281.2 of the Code of Civil Procedure: a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2, italics added.) The United States Supreme Court has recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [Section] 2 [of the FAA]." (Doctor's Associates, supra, 517 U.S. at p. 687, 116 S.Ct. 1652, italics added.) Thus, the California Supreme Court has concluded that the inquiry under the FAA is the same as under California law-i.e. whether there are reasons based on general contract principles for refusing to enforce an arbitration agreement. (Armendariz, supra, 2A Cal.4th at pp. 98-99, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
The Supreme Court has explained that arbitration is a favored method of resolving disputes only when it is voluntary. (Armendariz, supra, 24 Cal.4th at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The "`strong public policy of this state in favor of resolving disputes by arbitration'" does not extend to an arbitration agreement permeated by unconscionability. (Id. at p. 126, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Rather, "an arbitration agreement is to be rescinded on the same grounds as other contracts or contract terms. In this respect, arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts." (Id. at pp. 126-127, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
A preemption argument identical to HomeFirst's was rejected in Stirlen, supra, 51 Cal.App.4th at p. 1551, 60 Cal.Rptr.2d 138: "The FAA does not reflect a congressional intent to occupy the entire field of arbitration but preempts state regulation in this area only to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. [Citations.] Judicial refusal to enforce an arbitration clause clearly unconscionable under a general contract law principle not at all hostile to arbitration presents no obstacle to the objective of the FAA or any other congressional purpose." (Internal quotations marks and fn. omitted.)
Armendariz agreed with the Stirlen court that enforcing a "modicum of bilaterality" in arbitration agreements does not single out arbitration for disfavor. While the form of unconscionability (e.g., one-sided choice of forums) may be peculiar to the context of arbitration, the application of ordinary principles of unconscionability does not disparage arbitration as a favored voluntary remedy. (Armendariz, supra, 24 Cal.4th at pp. 119-120, 99 Cal. Rptr.2d 745, 6 P.3d 669.)

F. SEVERANCE
Civil Code section 1670.5 permits the court, upon finding a contract to be unconscionable, to refuse to enforce the contract or to "enforce the remainder of *385 the contract without the unconscionable clause...." HomeFirst contends that this court should sever the provisions which reserve from arbitration the remedies of foreclosure, set-off, and appointment of a receiver. And HomeFirst argues that such a severance would have no effect on the arbitrability of plaintiffs' claims here, as those claims do not implicate such remedies. We decline to do so.
In Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669, the Supreme Court found no abuse of discretion in the trial court's refusal to sever the invalid arbitration provisions where the unilateral arbitration agreement was "permeated" with unconscionability: "[S]uch permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract ... by augmenting it with additional terms." (Id. at pp. 124-125, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Courts have no inherent powers to reform contracts; consequently, the court must void the entire arbitration agreement. (Id. at p. 125, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
In the present case, we are likewise faced with an arbitration agreement in which no single provision can be stricken to remove the unconscionable taint. As we have previously mentioned, the lack of bilaterality appears not only in the reservation of remedies specified in section 20 of the loan documents (foreclosure, set-off, appointment of receiver) but also in the provisions allowing HomeFirst to proceed with its remedies despite a claim pending in arbitration and giving HomeFirst all remedies "afforded by law and equity." HomeFirst has cited no precedent, and we are aware of none, in which a unilateral agreement to arbitrate was saved by severing the offending provisions.
Indeed, it strikes us as woefully unfair to plaintiffs to allow HomeFirst at this late dateafter a dispute has arisen and after the reverse mortgage has terminatedto refute the unconscionable aspects of the arbitration agreement which HomeFirst itself drafted and from which HomeFirst stood to benefit over the life of the loan. "The overarching inquiry [under the doctrine of severance] is whether the interests of justice ... would be furthered." (Armendariz, supra, 24 Cal.4th at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669, internal quotation marks omitted.) We do not believe justice would be served by an effort to save the arbitration agreement by removing post hoc offending provisions for which HomeFirst no longer has any use.

III. DISPOSITION

The order denying the petition to compel arbitration is affirmed.
We concur: JONES, P.J., and SIMONS, J.
NOTES
[1] A petition to compel arbitration is a law and motion matter (rules 303(a)(2), 371, Cal. Rules of Court), but an order denying the petition is immediately appealable. (Code Civ. Proc., § 1294, subd. (a).)
[2] In a reverse mortgage the homeowner borrows against the equity in the home and makes no payment to the lender until the homeowner sells the house, moves out, or dies. The loan is then repaid out of the proceeds from the sale or through refinancing.
[3] In contrast, the "Important Information for All Borrowers" that accompanied the loan documents used "you" and "your" to refer to the borrower.
[4] The California Supreme Court has explained that the reference to grounds for "revocation" means grounds for rescission. (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 973, 64 Cal.Rptr.2d 843, 938 P.2d 903; accord, Armendariz, supra, 24 Cal.4th at p. 98, fn. 4, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
[5] The term "agreement" within section 1281.2 of the Code of Civil Procedure refers to the agreement to arbitrate, as distinguished from the overall contract in which that agreement is contained. (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street (1983) 35 Cal.3d 312, 322, 197 Cal. Rptr. 581, 673 P.2d 251.) Thus, we consider only the unconscionability of the arbitration provisions, not the unconscionability of the reverse mortgage transaction or the loan documents concomitant thereto.
[6] Earlier, in Graham, supra, 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165, the Supreme Court took a different approach. The court first examined whether the contract was a contract of adhesion. (Id. at pp. 817-819, 171 Cal.Rptr. 604, 623 P.2d 165.) Because a contract of adhesion is still fully enforceable, the court held that a contract of adhesion may be denied enforcement if it is oppressive or unconscionable or if it frustrates the reasonable expectations of the weaker party. (Id. at p. 820, 171 Cal.Rptr. 604, 623 P.2d 165; accord Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.)

Subsequently, in Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 925, footnote 9, 216 Cal.Rptr. 345, 702 P.2d 503, the Supreme Court observed that the two approaches of Graham and A & M Produce, supra, 135 Cal. App.3d 473, 186 Cal.Rptr. 114, should lead to the same result. (See also Stirlen, supra, 51 Cal.App.4th at pp. 1530-1533, 60 Cal.Rptr.2d 138; American Software, supra, 46 Cal. App.4th at p. 1390, fn. 2, 54 Cal.Rptr.2d 477; Patterson, supra, 14 Cal.App.4th at p. 1664, 18 Cal.Rptr.2d 563.) Most recently, the Supreme Court cited both approaches with approval. (Armendariz, supra, 24 Cal.4th at pp. 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
[7] In contrast, plaintiffs are expressly given no right of set-off. By statute, a party to an arbitration agreement may seek a provisional remedy from the court, including appointment of a receiver, if necessary to prevent the arbitration award from being rendered ineffectual. (Code Civ. Proc., § 1281.8.)
[8] HomeFirst points out that plaintiffs would have a statutory right to obtain a court order restraining the foreclosure if the foreclosure would render any arbitration award ineffectual. (Code Civ. Proc., § 1281.8.)