Filed 3/22/13  Quinoz v. Empire Today CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


GERMAN QUINONEZ,

      Plaintiff and Respondent,                A134448

      v.                              (San Mateo County
                                        Super. Ct. No. CIV493996)

EMPIRE TODAY, LLC,

      Defendant and Appellant.
_____/

German Quinonez filed a putative class action against Empire Today, LLC (Empire), a national flooring and window treatment business, alleging various Labor Code violations.  Empire moved to dismiss for improper venue or, in the alternative, to compel arbitration pursuant to a form subcontractor agreement Quinonez signed.  The trial court denied the motion.  Among other things, the court concluded the arbitration provision in the agreement was procedurally and substantively unconscionable.

Empire appeals.  It contends: (1) the Illinois choice of law provision is enforceable; (2) it has standing to enforce the arbitration provision; (3) the arbitration provision is enforceable under Illinois and California law, particularly in light of *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___ [131 S.Ct. 1740] (*Concepcion*); (4) the court erred by refusing to sever the allegedly unconscionable provisions from the

remainder of the agreement; and (5) the court erroneously concluded Empire failed to prove the agreement was "the actual agreement."

We issued a notice pursuant to California Rules of Court, rule 8.276 informing counsel for Empire that we were considering imposing sanctions on our own motion on the grounds that the appeal is frivolous and that counsel failed to comply with its ethical duty to call our attention to law unfavorable to Empire's position, specifically, *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138 (*Samaniego*). Counsel for Empire responded to the notice. We decline to impose sanctions on our own motion.

We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Subcontractor Installer Agreement*

In November 2006, Quinonez entered into a subcontractor installer agreement (Agreement) with CA West Flooring, Inc. (CA West Flooring).[1] The Agreement refers to CA West Flooring as "Empire" and is 11 single-spaced pages of small-font print. It contains a forum selection clause providing "[t]his Agreement shall be governed by, and construed in accordance with, the laws of Illinois and the parties agree jurisdiction and venue for any actions hereunder shall reside within the State of Illinois." The Agreement also includes a unilateral fee-shifting provision requiring the subcontractor to pay attorney fees Empire might incur to "enforce any of its rights hereunder or to collect any amounts due. Subcontractor shall pay Empire for all costs and expenses incurred including attorneys fees as well as interest on the amounts due. . . ."

One provision of the Agreement requires the subcontractor to "waive[ ] all right[s] to file a Mechanic's Lien" and provides remedies for Empire if the subcontractor does so:

"4.	The Subcontractor hereby waives all right to file a Mechanic's Lien and agrees that no Mechanic's Lien or any other form of lien shall be filed against the property of any Customer of Empire or in the name of any subcontractor, material men or

---

[1]	Empire claims CA West Flooring is a subcontractor of an entity it calls "Empire Carpets California Limited Partnership." Empire does not describe its relationship with CA West Flooring or with Empire Carpets California Limited, nor does Empire cite any evidence supporting this claim.

2

laborers employed by the subcontractor for any work or materials furnished in connection with performance of work under this Agreement. . . . In the event any attachment is levied or lien filed against any property of Empire or its Customers by reason of any act or omission or any alleged act or omission of subcontractor or its agents, then Empire shall have the right, . . . to take any and all steps necessary to release such attachments or lien, and Subcontractor shall be responsible for the payment to Empire or its Customers by reason thereof; plus interest thereof at the maximum rate permitted by law."

The Agreement requires the subcontractor to maintain an "escrow account" and describes the uses for such an account:

"5.     As part of this Agreement, the Subcontractor agrees to maintain an escrow account with Empire in the amount of Fifteen Hundred Dollars ($1,500.00). Such monies shall be used for the remedying of failures, breaches, or substandard work relating to Customer claims, in the event the Subcontractor fails to remedy the same, including faulty installation, damage to Customer's property, and product damage due to identifiable installation related causes, such as scratches, cuts, impact, etc. To establish and maintain the Subcontractor's escrow account, 5% of the Subcontractor's fee shall be withheld by Empire until $1,500.00, or such other amount as reasonably determined in Empire's sole opinion to be necessary to safeguard Empire's interests, has been accumulated excluding interest. All unused monies in the escrow account shall be returned to the Subcontractor ninety (90) days after termination of this Agreement if at that time there are no pending claims.

"8.     The Subcontractor agrees to warranty its installation workmanship against defects for a period of one year on all products installed. The Subcontractor shall promptly correct any work found, by Empire or its Customers, to be substandard, or at Empire's option, Empire may employ others to correct said work and deduct from the Subcontractors escrow account all costs incurred.

"10.    Subcontractor agrees to indemnity Empire and to hold it harmless from any claim, demand, or suit. . . .  In addition to all other rights and remedies available to it at law or in equity, Empire shall have the right to use the funds withheld pursuant to this Agreement to pay all obligations of Subcontractor under this paragraph."

The arbitration provision is set forth in the 34th and final section on pages 9 and 10 of the Agreement.  It provides:

"34.    Empire and Subcontractor agree that any and all disputes, claims or controversies (hereafter referred to as a 'claim') arising under or relating to this Agreement, . . . may, at the option of either Empire or Subcontractor, be adjudicated by final and binding arbitration under one arbitrator in accordance with the Commercial

3

Dispute Resolution Rules of the American Arbitration Association in effect at the time the demand for arbitration is made.

"Any arbitration proceeding brought under this Agreement, and any award, finding or verdict of or from such proceeding shall remain confidential between the parties and shall not be made public. Subcontractor agrees that Subcontractor will assert a Claim only on behalf of Subcontractor's own self and that Subcontractor will not assert a Claim on behalf of, or as a member of, a class or group in either an arbitration proceeding or in any other forum or action. Empire and Subcontractor shall allow and participate in discovery in accordance with the Federal Rules of Civil Procedure for a limited period of ninety (90) days after the filing of the answer or other responsive pleading. Unresolved discovery disputes may be brought to the attention of, and may be disposed by, the arbitrator. [E]ither Empire or Subcontractor may bring an action in any court of competent jurisdiction, if necessary, to compel arbitration under this provision, to obtain preliminary relief in support [of] a claim to be adjudicated by arbitration, or to enforce an arbitration award. A judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction. If any term or clause of this arbitration is found to be unenforceable or in violation of applicable state law, Empire and Subcontractor shall treat this arbitration agreement as if that term or clause did not exist, and the remainder of this arbitration agreement shall remain in full force and effect.

BOTH EMPIRE AND SUBCONTRACTOR ARE HEREBY AGREEING TO ARBITRATION, IF CHOSEN, RATHER THAN LITIGATION OR SOME OTHER MEANS OR DISPUTE RESOLUTION, TO ADDRESS THEIR GRIEVANCES OR ALLEGED GRIEVANCES WITH THE EXPECT[ATION] THAT THIS RESOLUTION PROCESS MAY BE MORE COST-EFFECTIVE AND EXPEDIENT FOR THE [PA]RTIES THAN LITIGATION. BY ENTERING INTO THIS AGREEMENT AND THE ARBITRATION PROVISIONS OF THIS SECTION, BOTH PARTIES ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY DISPUTE DECIDED IN A COURT OF LAW BEFORE A JURY, AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION, IF CHOSEN, OTHER THAN AS SET FORTH IMMEDIATELY BELOW. [¶] THE PARTIES AGREE THAT DUE TO THE POSSIBLE IMMEDIATE AND IRREPARABLE HARM FROM A VIOLATION OF THE RESTRICTIVE COVENANT SECTIONS OF THIS AGREEMENT, THESE ARBITRATION REQUIREMENTS SHALL NOT APPLY TO ANY NON-COMPETE, NON-SOLICITATION OR NON-DISCLOSURE PROVISIONS, RIGHTS, AND LEGAL REMEDIES CONTAINED ELSEWHERE IN THIS AGREEMENT."

The initials "G.Q." appear at the bottom of each page of the Agreement. The rules of the American Arbitration Association were not attached to the Agreement Quinonez signed.

*The Lawsuit*

Quinonez worked as a carpet installer and a "helper" for Empire from November 2006 to December 2008. He claims he was fired after informing Empire he worked "on a job removing carpet flooring where there was a great deal of asbestos."

In April 2010, Quinonez filed a putative class action against Empire on behalf of similarly situated individuals.[2] The complaint alleges Empire failed to comply with various wage and hour laws by: (1) misclassifying individuals as independent contractors rather than employees; (2) failing to pay overtime wages and wages due upon termination of employment; (3) provide meal periods or a premium for missed meal periods; and (4) provide wage statements. (Lab. Code, §§ 201, 226.7, 226, 510, Bus. & Prof. Code, § 17200.)[3]

Empire answered the complaint and then removed the case to the Federal District Court for the Northern District of California. A few months later, Empire moved to dismiss or transfer the case to Illinois pursuant to the Agreement's forum selection clause or, in the alternative, to compel arbitration. The district court denied the motion. It determined the forum selection clause did not apply to the dispute and applied California law to evaluate the validity of the arbitration clause in the Agreement. The court

---

[2] Quinonez apparently dismissed CA West Flooring as a defendant and sued it in a separate action, *Quinonez v. CA West Flooring, Inc.,* San Mateo Superior Court (No. CIV4992076). According to Quinonez's attorney, CA West Flooring was "in default" in that action as of September 2011.

[3] In December 2010, plaintiffs Salome Samaniego and Juventino Garcia filed a similar putative class action against Empire alleging similar California Labor Code violations (*Samaniego v. Empire Today LLC*, Ala. Super. Ct. (No. RG10549294)). Empire moved to dismiss or compel arbitration. The Alameda County Superior Court denied the motion. Analyzing a subcontractor installer agreement similar to the one at issue here, Division Three of this court affirmed, concluding: (1) the arbitration clause was procedurally and substantively unconscionable; (2) the choice of law provision was unenforceable and California law governed the enforceability of the arbitration clause; (3) the court was not required to sever the unconscionable provisions of the arbitration clause and enforce arbitration; and (4) the Federal Arbitration Act did not preempt the California unconscionability doctrine. (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138 (*Samaniego*).)

concluded the arbitration provision was invalid because the "class action waiver clause conflicts with California law" and because it "denies plaintiff, and others, an opportunity to exercise their legal rights." The court declined to sever the agreement to remove the "unenforceable provision."

Empire appealed to the Ninth Circuit Court of Appeals (Ninth Circuit) but later moved to remand the case to the San Mateo County Superior Court after Quinonez conceded the amount in controversy did not satisfy the jurisdictional threshold in the Class Action Fairness Act. The Ninth Circuit granted the motion and remanded the case to the superior court.[4]

*The Denial of Empire's Motion to Dismiss or Stay the Action and Compel Arbitration*

In June 2011, Empire moved to dismiss for improper venue or, in the alternative, to stay the action and compel arbitration. Empire argued Quinonez agreed to litigate the dispute in Illinois pursuant to the Agreement's forum selection clause. In the alternative, Empire moved to enforce the parties "agreement to arbitrate" their disputes under both Illinois and California law, claiming the arbitration provision was not unconscionable. In support of the motion, Empire submitted a copy of the Agreement and the declaration of Mario Lopez, an install manager for Empire.

In his declaration, Lopez averred he is "familiar with . . . the process of contracting with installers to perform flooring and window installation work" for Empire Carpets, a wholly-owned subsidiary of Empire. Lopez described the process he uses when he contracts with installers: he provides them with a "lengthy" application packet that includes the Agreement and "advise[s] the potential installers that they can take it home to review and complete or they can review and complete the application packet in the office, whichever they prefer." Lopez "encourage[s] them to take it home so that they

---

[4]     The Ninth Circuit dismissed the appeal pursuant to the parties' stipulation. In January 2011, Empire filed a motion to dismiss for improper venue or to stay and compel arbitration in the San Mateo Superior Court. A few days after Quinonez opposed the motion, the United States Supreme Court issued its opinion in *Concepcion*, *supra,* 131 S.Ct. 1740 and the parties agreed to take the motion off calendar and file a new round of briefing.

have more time to review the materials. . . ." Lopez then reviews the application packet with potential installers and answers their questions. According to Lopez, "potential installers are given an unlimited amount of time to ask questions and to consider and complete the paperwork, including the Agreement." Lopez reviews the completed application with the potential installer.

Lopez continued: "[i]f the potential installers have comments to the terms of the Agreement, [he is] open to negotiating those terms, subject to the approval of Empire's Market Support Group, and, if an agreement is reached, the potential installer can be engaged as a subcontractor for Empire." Finally, Lopez averred he knows Quinonez "as he was an installer in the San Francisco Market. Mr. Quinonez was contracted . . . pursuant to [the] . . . [A]greement to install carpet in approximately November 2006." According to Lopez, Quinonez spoke English "well enough to communicate" with him.

Quinonez opposed Empire's motion. Quinonez contended the forum selection clause was unenforceable and that California law applied to the dispute. He further argued the arbitration agreement was procedurally and substantively unconscionable under both California and Illinois law. In support of the motion, counsel for Quinonez submitted a declaration averring Quinonez's damages were approximately $22,000. Quinonez also submitted a declaration averring: (1) Spanish is his first language and he speaks "very little English[;]" (2) he resides in California, has never been to Illinois, has "very limited means[,]" and a current monthly income of $800; and (3) transferring the case to Illinois "would effectively deprive" him of the opportunity to "pursue [his] claims." Quinonez further averred that when he was hired as an installer, he was "required to execute a form Subcontractor Installer Agreement, whereupon [he] was supposed to simply fill in [his] personal information on the first page and sign and initial the Agreement. The Agreement was presented [to him] as a take-it-or-leave-it contract, and there was no negotiation whatsoever about the terms of the Agreement." The declaration was translated from English to Spanish for Quinonez.

Finally, Quinonez filed a request for judicial notice attaching, among other things, the district court's order denying Empire's motion to dismiss or compel arbitration and

7

the trial court's order denying Empire's motion to dismiss or compel arbitration in *Samaniego, supra,* 205 Cal.App.4th 1138.

Following a lengthy hearing, the court denied Empire's motion. In a 22-page written order, the court determined Empire failed to demonstrate it was an intended third party beneficiary of the Agreement. It also concluded the forum selection clause "[did] not require dismissal or change of venue" because, among other things, the lawsuit sought relief pursuant to California statutes and Quinonez's claims were not "founded upon a written contract." Next, the court determined the Agreement was "[a] contract of adhesion" and was procedurally unconscionable under California law because "[t]here was no negotiation of the . . . Agreement or the arbitration provisions thereof. There was clearly unequal bargaining power between the manual laborer and the corporate 'employer.' The Spanish-speaking [p]laintiff was presented with the lengthy English form contract, in tiny print, and required to fill in the blanks and sign it — without negotiation."

The court further concluded the Agreement was substantively unconscionable under California law because it was "one-sided, in effect, as to the remedies available to the parties, as compared to the option of arbitration." It explained, "[t]he bottom line is that the employing entity retains the rights to bring lawsuits against the Subcontractor/employee and/or to have monetary self-help from the mandatory escrow fund, as to any claims that conceivably would arise in this relationship, but the Subcontractor/employee's claims can be forced into arbitration (with no right to lawsuit and no self-help remedies)." The court also determined the arbitration agreement was unconscionable under Illinois law. Finally, the court declined to sever the unenforceable provisions because "[t]he arbitration provision has multiple unconscionability problems involving multiple provisions."

8

DISCUSSION

I.

### *Standards of Review*

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." [Citation.] The ruling on severance is reviewed for abuse of discretion.' [Citations.] In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. [Citations.]" (*Samaniego, supra,* 205 Cal.App.4th at p. 1144.) We also review the issue of Empire's standing to enforce the arbitration provision de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 708.)

II.

### *Assuming Empire Has Standing to Enforce the Agreement, the Agreement is Unenforceable*

The court determined that Empire, a nonparty to the Agreement, failed "to demonstrate by a preponderance of the evidence that it [was] a third party beneficiary of the Agreement. . . ."[5]

---

[5] The court noted the Agreement was "explicitly with CA West Flooring Inc. Although the term 'Empire' is used in the body of the form contract, that term is expressly defined as being CA West Flooring Inc. There is no mention . . . in the Agreement of any entity named Empire Today LLC." The court concluded Empire did not present any evidence regarding the relationship between CA West Flooring and Empire, "particularly economic, i.e., how money paid to [Quinonez] or payment for services provided by [Quinonez] to customers flowed to or from Empire. . . . No evidence is presented that CA West Flooring [ ] made affirmative promises to Empire. . . ."

9

On appeal, Empire contends it has standing to compel arbitration as a third-party beneficiary of the Agreement.  It also claims "Quinonez is equitably estopped from asserting claims against Empire while repudiating the Agreement."  We assume for purposes of argument that Empire is a third-party beneficiary of the Agreement, but we conclude the arbitration provision is unenforceable because it is procedurally and substantively unconscionable.

"California law on unconscionability is well established.  [U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.  [Citation.]  Phrased another way, unconscionability has both a procedural and a substantive element.  [Citation.]  The procedural element requires oppression or surprise.  [Citation.]  Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.  [Citation.]  The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner.  [Citation.]  Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable.  Both, however, need not be present to the same degree.  A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.  [Citations.]" (*Samaniego, supra,* 205 Cal.App.4th at pp. 1144-1145, internal quotations omitted, quoting *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821 (*Lhotka*).)

### A.  The Agreement is Procedurally Unconscionable

In its opening brief, Empire relies on Lopez's declaration and contends the arbitration provision is not procedurally unconscionable because Quinonez had "unlimited time to review the Agreement, had ample opportunity to bargain, was walked through the Agreement's specific terms, and was welcome to keep a copy of the Agreement."

10

This argument fails for two reasons. First, it is based on a complete mischaracterization of Lopez's declaration. In his declaration, Lopez described his general practice of providing "potential installers" with subcontractor installer agreements. Lopez did not aver he took any particular action with Quinonez. Lopez did not — as Empire contends — aver he gave Quinonez "an 'unlimited' amount of time to review the Agreement" and complete it, nor did Lopez state he reviewed the Agreement with Quinonez and informed him that he could "add provisions to, remove provisions from, or otherwise alter provisions in the Agreement . . . .'" In fact, Lopez's declaration says remarkably little about Quinonez. In the final paragraph of his declaration, Lopez stated only: (1) he "knows" Quinonez because he "was an installer in the San Francisco Market. Mr. Quinonez was contracted with pursuant to a written subcontractor agreement . . . in approximately November 2006[;]" and (2) Quinonez could communicate with him in English.[6]

Empire's claim that it is not at fault for Quinonez's apparent failure to read the Agreement or "attempt negotiation" fails. In the trial court, Quinonez averred Spanish is his first language and that he speaks "very little English." Quinonez further averred that when he was hired as an installer, he was "required to execute a form Subcontractor Installer Agreement, whereupon [he] was supposed to simply fill in [his] personal information on the first page and sign and initial the Agreement. The Agreement was presented [to him] as a take-it-or-leave-it contract, and there was no negotiation whatsoever about the terms of the Agreement." Considering— as we must — the evidence in the light most favorable to the court's determination, we conclude Quinonez was not presented with an opportunity to negotiate the Agreement. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [reviewing trial court's

---

[6] At oral argument, counsel for Empire conceded Lopez had no personal knowledge of the circumstances surrounding the formation of Quinonez's agreement with CA West Flooring. Counsel also admitted substantial evidence supports the trial court's finding that Quinonez was presented with the contract on a take-it-or-leave-it basis.

determination of unconscionability in the light most favorable to trial court's determination].)

Second, Empire's argument lacks support in case law. As it did unsuccessfully in *Samaniego*, Empire relies primarily on *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, where the appellate court concluded an employment contract was not procedurally unconscionable because it "was not buried in a lengthy employment agreement. Rather, it was contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully, Initial Each Paragraph and Sign Below.' It was set forth in a separate, succinct (four-sentence) paragraph that Roman initialed, affirming she had seen it." (*Id.* at p. 1471; see also *Samaniego, supra,* 205 Cal.App.4th at p. 1145.) As in *Samaniego*, Empire's reliance on *Roman* is misplaced. Here and in contrast to *Roman*, the arbitration clause is on the last two pages of a densely worded, single-spaced contract printed in small typeface. And unlike *Roman*, the arbitration provisions here were not set out in a separate section or flagged with a heading, and Quinonez did not initial them.[7] (*Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1252-1253 [arbitration provision unconscionable where it appeared near the end of a long, single-spaced document and was not highlighted or separately initialed].)

Before oral argument, Empire brought our attention to *Flores v. West Covina Auto Group, LLC* (2013) 212 Cal.App.4th 895 (*Flores*), a case published after Empire filed its reply brief. In *Flores*, plaintiff automobile buyers brought a class action against a dealership and repair facility for, among other things, violations of the Consumer Legal Remedies Act, and the Unfair Competition Law. The trial court granted the defendants' petition to compel arbitration, concluding there was "'no substantive unconscionability.'"

---

[7]  Quinonez initialed the bottom of each page of the Agreement but given that he likely does not read English, his initials on each page do not, as Empire claims, establish Quinonez saw the arbitration provision and agreed to its terms. Moreover, it does not appear Empire provided Quinonez with a copy of the relevant arbitration rules, a factor which would support a "finding of procedural unconscionability." (*Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 ["[n]umerous cases have held that the failure to provide a copy of the arbitration rules to which the employee would be bound supported a finding of procedural unconscionability" and citing cases].)

On appeal, the plaintiffs argued the arbitration clause was "unenforceable as unconscionable." (*Flores, supra*, 212 Cal.App.4th at pp. 905, 918.)

The Second Appellate District disagreed and affirmed. It held the arbitration clause presented only a "low degree of procedural unconscionability." (*Flores, supra,* 212 Cal.App.4th at p. 921.) The *Flores* court noted the plaintiffs submitted declarations in opposition to the petition to compel arbitration stating they: (1) were given a stack of documents and told to sign or initial them; (2) did not have an opportunity to negotiate the terms of the sales contract and were presented with the contract on a take-it-or-leave-it basis; (3) felt rushed into signing the documents; (4) did not realize the sales contract had a second, back side with additional terms, including the arbitration clause; and (5) did not have the opportunity to sign a contract without an arbitration clause or to use a computer to download information about arbitration organizations, including their procedures or rules. (*Id.* at p. 920.)

The *Flores* court also explained, however, that the primary buyer "acknowledged" at her deposition that she had the opportunity to thoroughly read the sales contract before signing it. (*Flores, supra,* 212 Cal.App.4th at p. 920.) In addition, the cobuyer testified the primary buyer "guided him through the contract and told him where to sign," including a line below the following paragraph: "'YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THE CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED–IN COPY WHEN YOU SIGNED IT.'" (*Id.* at pp. 920-921.)

The *Flores* court concluded the contract "represented a degree of procedural unconscionability at the low end of the spectrum" because the plaintiffs "did did not have the opportunity to negotiate the terms of the contract and it was presented to them as a take-it-or-leave-it proposition. That it was a contract of adhesion establishes this low degree of procedural unconscionability." (*Flores, supra,* 212 Cal.App.4th at p. 921.)

13

The court, however, determined the contract was "at the low end of the spectrum" of procedural unconscionability because the plaintiffs should not have been surprised by the arbitration clause. According to the court, "arbitration is a common means of dispute resolution in this day and age and cannot fairly be said to defeat the reasonable expectations of consumers." In addition, the *Flores* court explained, "the clause cannot fairly be described as hidden or inconspicuous within a prolix form. The contract itself is only one page with two sides. The form points out the existence of the arbitration clause on the front side in all capital letters, directly above the signature lines for the buyer and cobuyer. The arbitration clause is highlighted on the back in that it is outlined with a large box, by far the largest box of the three boxed-in provisions on the page. The provision's boldface, all capital heading further highlights it." (*Ibid.*)

The *Flores* court's conclusion on procedural unconscionability is distinguishable. Unlike the plaintiffs in *Flores*, Quinonez did not — and could not — read the contract before signing it. And in contrast to *Flores*, the Agreement was not two pages, but 11 single-spaced pages of small-font print. The arbitration clause was buried at the end of the Agreement — in the 34th section on the final pages of the Agreement. And in contrast to *Flores*, the arbitration clause was not highlighted in any meaningful way.

*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77 is instructive (*Gutierrez*). There, we concluded an arbitration provision in an automobile lease was procedurally unconscionable because the "lease was presented to plaintiffs for signature on a 'take it or leave it' basis. Plaintiffs were given no opportunity to negotiate any of the preprinted terms in the lease. The arbitration clause was particularly inconspicuous, printed in eight-point typeface on the opposite side of the signature page of the lease. [The plaintiff] was never informed that the lease contained an arbitration clause, much less offered an opportunity to negotiate its inclusion within the lease or to agree upon its specific terms. He was not required to initial the arbitration clause." (*Id.* at p. 89.)

Here as in *Gutierrez*, Quinonez was presented with the Agreement on a "take-it or leave it" basis. As the trial court concluded, "[t]here was no negotiation of the subject Agreement or the arbitration provisions," and there was "clearly unequal bargaining

14

power between the manual laborer and the corporate 'employer.' The Spanish-speaking Plaintiff was presented with the lengthy English form contract, in tiny print, and required to fill in the blanks and sign it — without negotiation." Substantial evidence supports this conclusion and, as a result, the trial court properly determined the Agreement was procedurally unconscionable.

## B. The Agreement is Substantively Unconscionable

Empire contends the court erred by concluding the arbitration provision was substantively unconscionable. According to Empire, the arbitration provision is "entirely fair" because Quinonez: (1) does not have to pay the costs of the arbitration; (2) does not have to travel to participate in the arbitration; and (3) is able to recover attorney fees. We are not persuaded.

"'[S]ubstantive unconscionability focuses on the one-sidedness of the contract terms. In the context of an arbitration agreement, the agreement is unconscionable unless there is a '"modicum of bilaterality"' in the arbitration remedy. [Citations.] 'Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself.' [Citation.]" (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853 (*Transamerica*).)

There are numerous one-sided provisions in the Agreement. First, it requires the subcontractor to deposit at least $1,500 into an escrow account controlled by Empire and allows Empire to deduct amounts from the subcontractor's pay. Second, the Agreement requires the subcontractor to waive his or her right to file a mechanic's lien. Third, the Agreement requires Quinonez to pay attorney fees incurred by Empire, but imposes no such reciprocal obligation on Empire. (*Samaniego, supra,* 205 Cal.App.4th at p. 1147 [identical requirement requiring plaintiffs to pay Empire's attorney fees "contribute[d] to a finding of unconscionability"].) Finally, — and as in *Samaniego* — "the Agreement exempts from the arbitration requirement claims typically brought by employers— namely, those seeking declaratory and preliminary injunctive relief to protect Empire's

15

proprietary information and noncompetition/nonsolicitation provisions—while restricting to arbitration any and all claims plaintiffs might bring." (*Id*. at p. 1147; cf. *Flores, supra,* 212 Cal.App.4th at p. 926 [agreement not substantively unconscionable where arbitration provision allowed both parties to seek self-help remedies in small claims court without waiving the right to arbitration].)

At oral argument, counsel argued *Samaniego* is distinguishable because the unconscionable provisions in the agreement at issue in that case — specifically a shortened six-month limitations period and one-sided attorney fee provision in Empire's favor — are not present in the Agreement. This argument misses the point for two reasons. First, the agreements in both cases restrict the plaintiffs' self-help remedies. Second, the Agreement contains several one-sided provisions. The absence of a shortened statute of limitations and a one-sided attorney fee provision does nothing to diminish the fact that the Agreement does "not display a modicum of bilaterality." (*Transamerica, supra,* 93 Cal.App.4th at p. 854.) Here as in *Samaniego*, "the multiple one-sided provisions in the Agreement, considered together," exhibit a "strong indicia of substantive unconscionability." (*Samaniego, supra,* 205 Cal.App.4th at p. 1148.) As a result, the court properly concluded the Agreement was substantively unconscionable.

III.

### *California Law Applies*

Empire contends Illinois law governs the enforceability of the arbitration clause because the Agreement contains a choice of law provision providing, "[t]his Agreement shall be governed by, and construed in accordance with, the laws of Illinois[.]" Empire contends the trial court erred when it declined to enforce this clause and applied California law when deciding the motion to compel arbitration.

Relying on *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465 (*Nedlloyd*), Empire claims the choice-of-law clause must be "construed broadly" to encompass plaintiffs' claims. The problem with this argument is that it was rejected in *Samaniego, supra,* 205 Cal.App.4th at page 1138, where our colleagues in Division Three concluded "Empire's reliance on *Nedlloyd* misses the mark. There, the Supreme

16

Court explained that '[u]nder *Nedlloyd*, . . . the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that "substantial injustice" would result from its enforcement [citation] or that superior power was unfairly used in imposing the contract [citation] [indicating that evidence of unfair use of bargaining power may defeat enforcement of a forum-selection clause contained in an adhesion contract].' [Citation.] Thus, '"[a] choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. . . . Choice-of-law provisions contained in [adhesion] contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent."' [Citation.]" (*Samaniego, supra,* 205 Cal.App.4th at p. 1148, quoting *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917-918 & fn. 6.) The *Samaniego* court then determined "the same factors that render the arbitration provision unconscionable warrant the application of California law." (*Samaniego, supra,* 205 Cal.App.4th at p. 1149.)

In its opening and reply briefs, Empire did not contend *Samaniego* was wrongly decided. In fact, Empire did not cite *Samaniego* at all. In its response to the California Rules of Court, rule 8.276 notice, counsel for Empire claimed "the *Samaniego* opinion's analysis of the choice-of-law provision is distinguishable" because the "two cases have very different factual records and materially different agreements." We disagree. The circumstances surrounding the formation of the Agreement are similar in both cases, and the agreements in both cases contain several one-sided, substantively unconscionable provisions. As in *Samaniego*, the factors that render the Agreement unconscionable warrant the application of California law. (*Samaniego, supra,* 205 Cal.App.4th at p. 1148.)

17

IV.

***Empire's Argument Regarding Concepcion Has No Merit***

Empire contends the United State Supreme Court's decision in *Concepcion, supra,* 131 S.Ct. 1740 "dispels any doubt about the enforceability of [the] arbitration provisions." According to Empire, *Concepcion* expanded the Federal Arbitration Act (FAA) to "preempt[ ] each unconscionability-based rationale the Superior Court provided for invalidating the arbitration provision here."

The problem with this argument is that it is identical to the argument made by Empire and rejected by our colleagues in *Samaniego, supra,* 205 Cal.App.4th at pages 1150-1151. Empire does not contend *Samaniego*'s rationale on this point was flawed. We agree with *Samaniego* and conclude state law continues to govern the unconscionability defense after *Concepcion.* As our high court recently explained, "'[g]enerally applicable contract defenses . . . such as unconscionability, may be applied to invalidate arbitration agreements without contravening' the FAA." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US), LLC* (2012) 55 Cal.4th 223, 246-250, quoting *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687.) Put another way, "the California Supreme Court has not held that unconscionability is no longer a viable defense to enforcement of an arbitration agreement. Rather, since *Concepcion*, the court has found the FAA applied in a construction defect dispute and proceeded to analyze whether the arbitration clause was unconscionable under California law, all without reference to *Concepcion.*" (*Flores*, *supra*, 212 Cal.App.4th at p. 919; see also *Sparks v. Vista Del Mar Child & Family Services* (2012) 207 Cal.App.4th 1511, 1519 ["*Concepcion* did not eliminate state law unconscionability as a defense to the enforcement of arbitration agreements subject to the Federal Arbitration Act"]; see also *Natalini v. Import Motors, Inc.* (2013) 213 Cal.App.4th 587, 595 [rejecting an argument similar to the one *Empire* makes here and noting "the impact of *Concepcion* is before the California Supreme Court in [a] car purchase agreement arbitration provision case, *Sanchez v. Valencia Holding Co. . . .* , S199119"]; *Flores,* at p. 912 ["the defense of unconscionability to terms other than class arbitration waivers survives *Concepcion*"].)

18

## V.

### *The Court Did Not Err by Refusing to Sever the Agreement*

As noted above, the court declined to sever the unconscionable provisions of the Agreement and enforce arbitration. It concluded severance was not appropriate notwithstanding the Agreement's severance clause because "there is extensive interplay between the arbitration clause and the other provisions of the Agreement maximizing the remedies and rights of CA West Flooring . . . while subtracting and minimizing the remedies and rights of [Quinonez]. The arbitration provision has multiple unconscionability problems involving multiple provisions."

Empire's final argument is the court erred by refusing to sever "any supposedly unconscionable terms" and otherwise enforce arbitration. We disagree. "When an arbitration agreement is 'permeated' by unconscionability[,] the decision whether to sever the objectionable clauses or refuse to compel arbitration is within the trial court's exercise of discretion. [Citations.]" (*Samaniego, supra,* 205 Cal.App.4th at p. 1149.) "'An arbitration agreement can be considered permeated by unconscionability if it "contains more than one unlawful provision. . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." [Citations.] "The overarching inquiry is whether '"the interests of justice . . . would be furthered"' by severance.'" (*Ibid,* quoting *Lhotka*, *supra*, 181 Cal.App.4th at p. 826.)

Here, the court did not abuse its discretion by concluding severance would not serve the interests of justice. The authorities cited by Empire, including *Gutierrez, supra,* 114 Cal.App.4th 77, and *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76 (*McManus*) do not alter our conclusion. In *Gutierrez,* the "plaintiffs did not argue that any aspect of the arbitration agreement, aside from the costs provision, was unconscionable." As a result, we concluded plaintiffs "waived any argument that multiple defects exist in the arbitration agreement precluding severance." (*Gutierrez, supra,* 114 Cal.App.4th at p. 93.) Here, there was no such waiver. *McManus* is similarly inapposite. There, the court determined only one provision — one requiring the payment

19

of fees — was unconscionable. As the court explained, "with the exception of the cost provision, the arbitration agreements are otherwise enforceable. The arbitration agreements are not so 'permeated' with unconscionable provisions that cannot be saved." (*McManus, supra,* 109 Cal.App.4th at p. 102, quoting *Armendariz* v. *Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 122-125.) As such, the court properly declined to sever the Agreement.

Having reached the conclusion that the Agreement is procedurally and substantively unconscionable and that the court properly declined to sever it, we need not address Empire's argument that the court erred by concluding it failed to establish a foundation for the Agreement. We note, however, that "[f]or purposes of a petition to compel arbitration, it is not necessary to follow the normal procedures of document authentication. '[T]he court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists. . . .' [Citation.] The statute does not require the petitioner to introduce the agreement into evidence. A plain reading of the statute indicates that as a preliminary matter the court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218-219, citing Code Civ. Proc., § 1281.2.)

## DISPOSITION

The order denying motion to dismiss for improper venue or to stay and compel arbitration is affirmed. Quinonez is awarded costs on appeal.

20

_____

Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.