Filed 6/19/13  Shapiro v. TD Ameritrade CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MAYARIA SHAPIRO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TD AMERITRADE, INC., et al.,<br><br>    Defendants and Appellants. | H037323<br>(Monterey County<br>Super. Ct. No. M110280) |

Respondent Mayaria Shapiro, as conservator for Johnnie Cubbage (Cubbage), filed an action for conversion, unlawful business practices (Bus. & Prof. Code, § 17200 et seq.), and elder abuse against appellants TD Ameritrade, Inc. (TDA) and its broker, Desbele Gebre.  Appellants brought a motion to compel arbitration, which the trial court denied.  On appeal, appellants contend:  (1) the trial court abused its discretion in considering inadmissible evidence, (2) insufficient evidence supported the court's determination, and (3) the arbitration agreement is not unconscionable.  We conclude that the trial court erred in considering inadmissible evidence and thus there was insufficient evidence to support the trial court's finding that Cubbage lacked the capacity to enter into an arbitration agreement.  Since the trial court did not determine whether the arbitration agreement was unconscionable, we reverse and remand for further proceedings.

**I.  Procedural and Factual Background**

In January 2011, respondent, Cubbage's daughter, filed a complaint that alleged causes of action for conversion, unlawful business practices, and elder abuse against appellants.[1]  The complaint alleged that Cubbage was hospitalized on May 6, 2009, for several days due to changes in his memory and mental functioning.  On May 11, 2009, neuropsychiatrist Dr. John Donaldson examined Cubbage and determined that he was suffering from dementia and no longer capable of giving informed consent due to advancing memory deficits.  Between May 21 and May 31, 2009, Cubbage was again hospitalized and eventually diagnosed with VGKC-LE, a rare form of limbic encephalitis.

The complaint further alleged that while Cubbage was hospitalized, his son, Joseph, retained attorney Pascal Anastasi to prepare documents giving Joseph control over Cubbage's various monetary and retirement accounts.  Anastasi advised Cubbage to sign these documents despite his lack of capacity to do so.  During this same period, respondent notified TDA that Cubbage was incapacitated and unable to manage his account, and thus no withdrawals should be allowed.  TDA's representatives, including Gebre, informed respondent that written notice was necessary to prevent any withdrawals to Cubbage's account.  On May 27, 2009, respondent faxed Dr. Donaldson's letter confirming Cubbage's incapacity.  Despite notification of Cubbage's incapacity, TDA allowed Joseph to withdraw approximately $160,000 on June 1, 2009.  Joseph then used these funds for his personal use.

In June 2011, appellants brought a motion to compel arbitration and stay court proceedings pending arbitration.  Appellants attached to their motion a declaration by Jeffrey K. Plummer, who is a manager of compliance operations at TDA.  His declaration states that when clients open a cash and option account with TDA, they must execute a

---

[1]     The complaint also named as defendants:  Joseph J. Cubbage (Joseph), Merrill Lynch, Pierce, Fenner & Smith Inc., Craig Brinton, and Pascal Anastasi.  These defendants are not parties to this appeal.

"Cash and Option Agreement." This agreement states in relevant part: "The Client Agreement applicable to this brokerage account agreement contains predispute arbitration clauses. I agree to be bound by the terms of the agreement including the arbitration agreement located in section 12 of the Client Agreement." The Cash and Option Agreement also states: "I have received and read the 'Client Agreement,' which is incorporated by this reference, that will govern my account. I agree to be bound by this Client Agreement, as amended from time to time, and request an account to be opened in the name(s) set forth below." The arbitration provision in the "Client Agreement" is in a separate section, is highlighted with bold text, and states that "any controversy" between TDA and the client "arising out of or relating to this Agreement . . . shall be arbitrated and conducted under the provisions of the Code of Arbitration of the NASD."

Appellants also attached to the motion a copy of the Cash and Option Agreement executed by Cubbage and his wife on March 25, 2009, as well as a copy of the Client Agreement in effect when Cubbage's account was opened. According to Plummer, a copy of the Client Agreement is provided to each new client of TDA.

In July 2011, respondent filed opposition to the motion to compel arbitration. Respondent argued that the arbitration clause was void due to Cubbage's diminished capacity when he executed the Cash and Option Agreement and the arbitration provision was substantively and procedurally unconscionable. Respondent attached her own declaration to her opposition. Respondent stated that in February 2009, she observed Cubbage demonstrate signs of physical deterioration and he said to her, "I think I'm losing my mind." She took Cubbage to the emergency room on May 6, 2009, and he was hospitalized for several days at Salinas Valley Memorial Hospital. On May 26, 2009, Dr. Donaldson prepared a letter confirming Cubbage's lack of capacity, which respondent attached as an exhibit to her declaration. According to respondent, Cubbage was subsequently hospitalized at Stanford Hospital and Community Hospital of the Monterey Peninsula in late May 2009. He was then diagnosed with VGKC-LE.

In May 2010, respondent was appointed temporary conservator of the person of Cubbage.  In September 2010, she was appointed permanent conservator of the estate and person of Cubbage.

Respondent also attached the declaration by her attorney Sergio Parra.  He stated that he had reviewed the Code of Arbitration of the Financial Industry Regulatory Authority (FINRA).  He also stated that the FINRA arbitration rules were unconscionable because respondent would be required to pay approximately $29,000 to $45,000, "if not more," in fees plus $1,425 to $1,800 to open a claim for arbitration, discovery depositions were only allowed under " 'extraordinary circumstances,' " the panel of arbitrators was not required to follow state or federal rules of evidence, and the agreement containing the arbitration clause was not executed.

Appellants filed a reply in support of their motion to compel arbitration. Appellants argued that respondent failed to meet her burden that the arbitration agreement was void, because she did not proffer any admissible evidence establishing that Cubbage was incompetent when he executed the arbitration agreement.  Appellants also argued that the FINRA Code of Arbitration Procedure was not unconscionable.  In addition, appellants filed evidentiary objections to the declarations by respondent and Parra as well as the exhibit consisting of Dr. Donaldson's diagnosis.  They also attached Plummer's declaration authenticating a complete copy of the TDA Client Agreement.

Following argument by counsel, the trial court issued an order denying appellants' motion to compel arbitration.  The trial court stated:  "John Cubbage was determined, by his doctor, to have been 'cognitively incapacitated' sometime prior to May 11, 2009.  By May 11, 2009, Mr. Cubbage's 'memory deficits are so severe that he was incapable of giving informed consent'.  According to the doctor, Mr. Cubbage was incapable of taking himself to the doctor on his own.  As early as February, 2009, Mr. Cubbage told his daughter that he was 'losing his mind' and his daughter saw signs of physical deterioration."  Thus, the trial court found that respondent had shown that Cubbage was

not mentally competent when he executed the Cash and Option Agreement and thus there was no agreement to arbitrate. The trial court did not rule on appellant's evidentiary objections to respondent's declaration and Dr. Donaldson's letter or the issue of unconscionability.

## II. Discussion

### A. Agreement to Arbitrate

Respondent contends that appellants failed to prove that Cubbage ever received or agreed to the arbitration provision in the Client Agreement, or that the arbitration provision was properly incorporated into the Cash and Option Agreement. Thus, she claims that there was no agreement to arbitrate.

However, these arguments were not made before the trial court. In her opposition to the motion to compel arbitration, respondent argued, among other things, that the arbitration provision was not executed, either by initials or any signatures, and thus was procedurally unconscionable. The trial court found that Cubbage signed the Cash and Option Agreement, which included "'predispute arbitration clauses'" and referred the client to the Client Agreement. The trial court also found that "[n]either the 'predispute' arbitration clauses nor the Client Agreement were signed or initiated by John Cubbage or any other person." The trial court, however, did not consider whether the agreement was procedurally unconscionable or whether the arbitration provision was incorporated into the Cash and Option Agreement.

Even assuming that respondent's arguments have not been waived, they have no merit. Referring to Plummer's declaration that "[a] copy of the Client Agreement in effect on the date a particular account is opened is provided to each new client when he or she opens his or her account," respondent contends that there was no evidence that Cubbage received the unsigned Client Agreement. However, Cubbage's signature on the Cash and Option Agreement refutes her contention. The Cash and Option Agreement

states in two separate paragraphs that Cubbage had received and read the Client Agreement.

Relying on *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, respondent next argues that the Client Agreement was not properly incorporated into the Cash and Option Agreement. As a condition of her employment, the plaintiff in *Chan* signed a document in which she agreed to be registered with various entities including the New York Stock Exchange (NYSE). (*Id.* at pp. 635-636.) The document also stated that she agreed "'to abide by the Statute(s), Constitution(s), Rule(s) and By-Law(s)'" of these entities. (*Id.* at p. 636.) The NYSE had a rule that any controversy would be settled by arbitration. (*Ibid.*) At issue was whether the arbitration provision was properly incorporated by the document signed by the plaintiff. (*Id.* at p. 641.) In resolving the issue, *Chan* applied the following test: (1) "'"the reference must be clear and unequivocal,"'" (2) "'"the reference must be called to the attention of the other party and he must consent thereto,"'" and (3) "'"the terms of the incorporated document must be known or easily available to the contracting parties."'" (*Ibid.*, italics omitted.) *Chan* held as a matter of law that the document "failed to *clearly and unequivocally* refer to the incorporated document," "the reference did not identify any document or source by title," and the "reference was amorphous, and did not guide the reader to the incorporated document." (*Id.* at p. 643.)

The facts in the present case are readily distinguishable from those in *Chan*. The Cash and Option Agreement clearly and unequivocally referred to the Client Agreement, expressly incorporated the Client Agreement, and stated that the Client Agreement contained predispute arbitration clauses. In signing the Cash and Option Agreement, Cubbage expressly agreed to be bound by the predispute arbitration clauses of the Client Agreement, and indicated that he had received and read the Client Agreement. Thus, the Cash and Option Agreement incorporated the Client Agreement as a matter of law.

## B.  Admissibility of Evidence

Appellants contend that Dr. Donaldson's letter and portions of respondent's declaration were inadmissible.

"Except as provided by law, hearsay evidence is inadmissible."  (Evid. Code, § 1200, subd. (b).)[2]  "Any statement not made by a witness testifying in court before the fact finder constitutes hearsay evidence when offered for its truth.  [Citation.]  . . . Hearsay evidence is generally incompetent and inadmissible without statutory or decisional authorization, or absent stipulation or waiver by the parties."  (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 608-609.)  We review the trial court's determination that evidence was admissible under an exception to the hearsay rule for an abuse of discretion.  (*People v. Jones* (1998) 17 Cal.4th 279, 308.)

Respondent contends that Dr. Donaldson's letter, which was attached as an exhibit to her declaration, falls within the business records exception to the hearsay rule.

Section 1271 sets forth the elements of the business records exception.  It provides:  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business;  [¶]  (b) The writing was made at or near the time of the act, condition, or event;  [¶]  (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and  [¶]  (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  (§ 1271.)

Here, Dr. Donaldson's letter states that Cubbage's "wife and daughter brought him to the office because he was incapable of coming on his own," "during [his] exam it became obvious that [Cubbage] could not retain any new information for longer than a few minutes" and, based on "historical information his wife and daughter provided, [he]

_____

[2]    All further statutory references are to the Evidence Code unless otherwise specified.

believe[d] he ha[d] been cognitively incapacitated for at least two weeks." Though Dr. Donaldson's notes of his examination of Cubbage during the visit or the results of any tests that were conducted would constitute part of his business records, his letter was not made in the regular course of business. Moreover, even assuming the letter constituted a business record, respondent was neither a custodian nor a "qualified witness" who could testify as to its identity or mode of preparation, since she had no knowledge of Dr. Donaldson's recordkeeping procedures. Respondent was not employed by Dr. Donaldson and had no business relationship with his office. (Cf. *County of Sonoma v. Grant W.* (1986) 187 Cal.App.3d 1439, 1451.) Accordingly, Dr. Donaldson's letter did not fall within the business records exception to the hearsay rule.

Respondent also argues that Dr. Donaldson's letter was admissible because "portions of the document contain[] facts that are in support of prior consistent testimony made in the Shapiro Declaration and reflective of her state of mind."

Section 1236 states: "Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement is consistent with his testimony at the hearing and is offered in compliance with Section 791."

Section 791 states: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: [¶] (a) Evidence of a statement made by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement; or [¶] (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made before the bias, motive for fabrication, or other improper motive is alleged to have arisen."

First, neither Dr. Donaldson's letter nor any of the statements in his letter were offered in compliance with section 791. Second, respondent's prior statements of

Cubbage's condition in Dr. Donaldson's letter, which are consistent with her statements in her declaration, do not make Dr. Donaldson's letter admissible. A witness's previous statement may be admissible under this exception if it is consistent with his or her subsequent testimony. In other words, the witness, who is offering the testimony and who made a previous consistent statement, must be the same person. Here, there is no previous statement by Dr. Donaldson which would make his letter admissible under section 1236.

Relying on *People v. Lewis and Oliver* (2006) 39 Cal.4th 970 (*Lewis*) and *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127 (*Casella*), respondent next contends that Dr. Donaldson's letter was "properly admitted because it reflects [her] state of mind" under sections 1200 and 1250.

Section 1250 provides: "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant. [¶] (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."[3]

In *Lewis*, a witness testified that she noticed and remembered a particular vehicle based on an out-of-court statement by her neighbor. (*Lewis*, *supra*, 39 Cal.4th at p. 1025.) *Lewis* held that the statement was not hearsay because the witness did not testify as to the truth of her neighbor's statement but about her own state of mind. (*Id.* at pp. 1025-1026.) *Casella* held the trial court did not abuse its discretion in admitting

---

[3] Section 1252 provides: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

evidence of the plaintiff's out-of-court statements on the ground that that they were not offered to prove the truth of the matter asserted, but rather to prove the plaintiff's state of mind. (*Casella*, *supra*, 157 Cal.App.4th at p. 1147.) Neither *Lewis* nor *Casella* assists respondent's position. Here, Dr. Donaldson's letter was "evidence of a statement that was made other than by a witness while testifying at the hearing and that [was] offered to prove the truth of the matter stated." (§ 1200, subd. (a).) It was not offered to prove his state of mind.

Relying on *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 850 (*Carson*), respondent also contends Dr. Donaldson's letter was admissible under section 356. This statute "permits admission of the remainder of an otherwise inadmissible conversation where a part of the conversation has already been admitted." (*Carson*, at p. 850.) In *Carson*, the trial court admitted part of the plaintiff's conversation with an investigating officer under section 1220 as an admission by a party.[4] (*Carson*, at pp. 849-850.) *Carson* held the trial court erred in excluding evidence of other statements that the plaintiff made in this conversation. (*Carson*, at p. 850.) *Carson* has no relevance to the present case. Here, no portion of Dr. Donaldson's letter was admissible.

In sum, we conclude that the trial court abused its discretion in relying on Dr. Donaldson's letter in determining that Cubbage lacked the capacity to enter into the Cash and Option Agreement.

We next consider respondent's declaration. Her declaration states that on May 11, 2009, Dr. Donaldson "determined that [Cubbage] was suffering from severe dementia and that due to advancing memory deficits he was no longer capable of giving informed consent," and Cubbage "was subsequently diagnosed with VGKC-LE, a rare

---

[4]     Section 1220 states:  "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

form of limbic encephalitis." These diagnoses were out-of-court statements offered for their truth and thus constitute hearsay. Since these statements were inadmissible hearsay, the trial court erred in not excluding them.

Relying on sections 1222 and 1224, respondent argues that these statements are admissible "as an authorized admission by [her], as a Conservator of Cubbage, concerning Cubbage's own mental state and medical history."

Section 1222 states: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement; and [¶] (b) The evidence is offered either after admission of evidence sufficient to sustain a finding of such authority or, in the court's discretion as to the order of proof, subject to the admission of such evidence." Here, section 1222 is inapplicable because the statements were not offered against Cubbage. Instead, they were offered to prove his position that he was mentally incapacitated when he signed the Cash and Option Agreement.

Section 1224 also does not provide a basis for the admission of these statements. It provides: "When the liability, obligation, or duty of a party to a civil action is based in whole or in part upon the liability, obligation, or duty of the declarant, or when the claim or right asserted by a party to a civil action is barred or diminished by a breach of duty by the declarant, evidence of a statement made by the declarant is as admissible against the party as it would be if offered against the declarant in an action involving that liability, obligation, duty, or breach of duty." (§ 1224.) In the present case, respondent's statements were not offered to establish the liability, obligation, or duty of a party to this action, nor were the statements offered to show a breach of duty that would bar or diminish a claim or right asserted by a party to the present action. Respondent did not allege a cause of action arising out of Cubbage's opening of the account in March 2009.

Rather, respondent's causes of action arose out of events that occurred in and after May 2009.

Respondent further argues that these statements were admissible under section 1250 because they demonstrated her state of mind when she was trying to prevent appellants from allowing withdrawals from Cubbage's account.  Section 1250 is inapplicable.  Respondent's state of mind is not relevant to the issue of Cubbage's incapacity.

Respondent next argues that her statement that "[a] letter confirming Mr. Cubbage's lack of capacity was prepared by Dr. Donaldson" is not hearsay.  She claims that "it concerns [her] percipient knowledge about a document she received."  The statement is admissible for a nonhearsay purpose, that is, to explain why she took certain actions.  However, the statement is hearsay when offered for the truth of the matter, that is, to establish that Cubbage was incapacitated.  Respondent also claims that this statement is admissible as an authorized admission.[5]  However, as previously discussed in connection with respondent's previous statement, section 1222 is inapplicable.  The statement was not offered against Cubbage.  Thus, this statement was inadmissible to support the trial court's finding of Cubbage's incapacity.

Respondent contends that her statement that "[i]n February 2009," she "specifically remember [Cubbage] telling me that 'I think I'm losing my mind[]' " is admissible under section 1250.  We agree.  "[E]vidence of a statement of the declarant's then existing state of mind, . . . is not made inadmissible by the hearsay rule when:  [¶] (1) The evidence is offered to prove the declarant's state of mind . . . at that time or at any other time when it is itself an issue in the action."  (§ 1250.)  "The sole tests are, is the . . . mental state of the declarant at the time material to the issues under trial, and does the

---

[5]     Respondent cites section 1250.  However, section 1222 sets forth the authorized admission exception to the hearsay rule.

declaration indicate what the declarant's . . . mental state at the time was." (*In re Estate of Carson* (1920) 184 Cal. 437, 445.)

Here, Cubbage's mental state was material to the issue of whether he was incapacitated when he executed the Cash and Option Agreement. Moreover, his statement that he was "losing [his] mind" tends to establish that he had difficulty with information processing, including memory loss. (Prob. Code, § 811, subd. (a).) Thus, the trial court did not abuse its discretion in considering this statement.

Appellants also challenge respondent's declaration on the ground that the trial court erred in considering her legal conclusions.

Respondent's declaration states: "[Cubbage] was likely suffering from a severe diminished capacity," she believes [Cubbage] lacked mental capacity to consent to th[e] agreement," and "it appears [Cubbage] had been suffering from a diminished capacity."

Whether an individual has the mental capacity to enter into a contract is a legal determination and is a mixed question of law and fact. (*In re Estate of Sexton* (1926) 199 Cal. 759, 770.) A declarant, including a physician, cannot give his or her opinion as to an individual's capacity to enter into a contract without knowledge of the legal criteria of capacity. (*Id.* at p. 769.)

Respondent argues, however, that her statements were admissible under section 800.

Section 800 states: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony." This statute " 'merely requires that witnesses express themselves at the lowest possible level of abstraction. [Citation.] Whenever feasible "concluding" should be left to the jury; however, when the details observed, even though recalled, are "too complex or too subtle" for concrete description by the witness, he may state his general impression.' [Citation.]" (*Angelus*

*Chevrolet v. State of California* (1981) 115 Cal.App.3d 995, 1001; see also *People v. Hinton* (2006) 37 Cal.4th 839, 889.)  Here, it is not possible that respondent's impressions of Cubbage's mental condition were based on behaviors that were too complex or subtle to describe.  Thus, her legal conclusions were inadmissible under section 800.

Respondent's reliance on *People v. DeSantis* (1992) 2 Cal.4th 1198 is misplaced. *DeSantis* held that the trial court erred in excluding a witness's statement that he "had trouble remembering things 'because of his brain cells.'" (*Id.* pp. 1227-1228.)  Unlike respondent's statements that Cubbage suffered from diminished mental capacity, the statement in *DeSantis* was at the lowest level of abstraction.

*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686 (*Mamou*) also does not support respondent's position.  In *Mamou*, the plaintiff's declaration stated "that in March 2004, when Fiore and Brown asked him to 'help out with the Walnut Creek sales office,' the three of them 'had a long discussion about the issue with employees on medical leaves of absence.  Mr. Fiore was clearly very upset about the number of such leaves and specifically told me that he wanted me to help him make sure that those who were out on leave never came back; or if they did come back, that I would make their lives so miserable that they would quit.  I told Mr. Fiore that I would not do that.  By that time, I had already been wrongly named as a defendant in three lawsuits by former Trendwest employees and knew that if I carried out Mr. Fiore's directive, I would just be inviting more such lawsuits.  Mr. Fiore was unhappy with my response to him, but we ultimately agreed that I would take over the Walnut Creek office." (*Mamou*, at p. 696.) This court  concluded that the statements were admissible, observing that the "statement about Fiore's mental state may have been an opinion, but if so [the plaintiff] was surely competent to give it based on his own observations." (*Mamou*, at p. 696, fn. 8.)  *Mamou*, unlike the present case, did not involve a legal conclusion.

We thus conclude that the trial court abused its discretion in failing to sustain appellants' objections to the inadmissible evidence in respondent's declaration.

### C. Capacity to Contract

Appellants contend that there was insufficient evidence to support the trial court's ruling that Cubbage lacked the capacity to enter into the contract.

In California, "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. [Citation.]" (*Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972.)

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) "All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights." (Civ. Code, § 1556.) Specific provisions of the Civil Code govern the determination of the capacity of a person of unsound mind to contract. (Civ. Code, § 1557, subd. (b).) "A person entirely without understanding has no power to make a contract of any kind." (Civ. Code, § 38.) These contracts are void. (*Smalley v. Baker* (1968) 262 Cal.App.2d 824, 834-835 (*Smalley*), disapproved on other grounds in *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 485-486.) However, "[a] . . . contract of a person of unsound mind, but not entirely without understanding, . . . is subject to rescission." (Civ. Code, § 39, subd. (a).) "A rebuttable presumption affecting the burden of proof that a person is of unsound mind shall exist for purposes of this section if the person is substantially unable to manage his or her own financial resources or resist fraud

or undue influence." (Civ. Code, § 39, subd. (b).) Whether a party seeks to void or rescind a contract, statutory language and case law establish the " 'understanding' or cognitive test as the prevailing standard of legal competency." (*Smalley*, *supra*, 262 Cal.App.2d at p. 835.)

The evidentiary requirements for judicial determinations of an individual's capacity to contract are set forth in the Due Process in Competence Determinations Act (Prob. Code, § 810 et seq.; see Stats. 1995, ch. 842, § 12, p. 6413). "[T]here shall exist a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions." (Prob. Code, § 810, subd. (a).) Probate Code section 811 provides that evidence supporting a determination of incapacity to contract must satisfy two elements. First, there must be evidence of a deficit in at least one of four specified mental functions: (1) alertness and attention, (2) information processing, including memory loss, (3) thought processes, and (4) ability to modulate mood and affect. (Prob. Code, § 811, subd. (a).) Second, any such deficit may be considered "only if the deficit . . . significantly impairs the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question." (Prob. Code, § 811, subd. (b).)

This court reviews the trial court's determination of a person's capacity to contract under the substantial evidence standard. (*Estate of Teed* (1952) 112 Cal.App.2d 638, 643-644.) Under this standard, "an appellate court will (a) view the evidence in the light most favorable to the respondent, (b) not weigh the evidence, (c) indulge all intendments which favor sustaining the finding of the trier of fact, and (d) not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. [Citations.]" (*Estate of Isenberg* (1944) 63 Cal.App.2d 214, 216-217.)

Here, appellants presented evidence of the existence of an arbitration agreement. Thus, the burden shifted to respondent to prove, by a preponderance of the evidence, facts establishing a defense to its enforceability, that is, whether Cubbage lacked the

capacity to contract. Based on Dr. Donaldson's letter and Cubbage's statement to respondent, the trial court concluded that Cubbage lacked the capacity to enter into an agreement to arbitrate. We now consider whether there was substantial evidence to support the trial court's determination.

Here, the admissible evidence of Cubbage's mental capacity on March 25, 2009, consisted of the following: respondent's observation that Cubbage demonstrated signs of physical deterioration in February 2009, his statement to respondent, " 'I think I'm losing my mind' " in February 2009, his hospitalization for several days beginning on May 6, 2009, and his subsequent hospitalization in late May 2009 at Stanford Hospital and at Community Hospital Monterey Peninsula.[6] First, drawing all inferences in favor of the trial court's ruling, this evidence was insufficient to establish that Cubbage suffered a deficit in information processing or thought processes when he executed the Cash and Option Agreement on March 25, 2009. Second, even assuming that the evidence established that Cubbage suffered these deficits, there was insufficient evidence that these deficits significantly impaired his "ability to understand and appreciate the consequences of" his executing this agreement. (Prob. Code, § 811, subd. (b).) Thus, there was insufficient evidence to support the trial court's finding of Cubbage's incapacity.

### D. Respondent Not Party to Arbitration Agreement

---

[6]    Respondent notes that "[a]lthough the Cash and Options application was signed on March 25, 2009, the application has a print and 'effective' date as February 23, 2009." Thus, she argues that the timing of her observations "coincides with and closely precedes the date that the Cash and Options agreement became effective." That the agreement became effective on February 23, 2009, is not relevant to a determination of Cubbage's mental capacity when he executed the application on March 25, 2009.

Respondent also argues that the arbitration agreement is not binding on her because she neither executed the arbitration agreement nor derived any benefit from the agreement to open the account. There is no merit to this argument.

Respondent was appointed as conservator for the estate and person of Cubbage on September 3, 2010. She then filed this action in her capacity as conservator for Cubbage. Pursuant to Code of Civil Procedure section 372, subdivision (a), a guardian, conservator, or guardian ad litem is authorized to appear on behalf of an incompetent person. However, his or her appearance is only in a representative capacity. (See *Estate of Cochems* (1952) 110 Cal.App.2d 27, 29 ["A guardian *ad litem* is not a party to an action, but merely the representative of record of a party."].) "Unless a statute provides otherwise, every action must be prosecuted in the name of the real party in interest. ([Code Civ. Proc.,] § 367.) 'A real party in interest is one who has "an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action." [Citations.]'" (*Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 57.) Here, Cubbage, not respondent, is the real party in interest in the present case. Thus, it is irrelevant whether respondent executed the arbitration agreement.

Respondent's reliance on *County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237 (*Contra Costa*) and *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593 (*Matthau*) is misplaced. In *Contra Costa*, the plaintiff, who was injured while crossing the street, brought an action alleging: negligence against the driver of the vehicle, maintaining a dangerous condition against the county and its transit authority, and medical malpractice against her health care provider (Kaiser). (*Contra Costa*, at p. 240.) Kaiser brought a motion to compel arbitration, which the trial court granted. (*Ibid.*) The driver, the county, and its transit authority subsequently filed cross-complaints for equitable indemnity against Kaiser. (*Ibid.*) The Court of Appeal affirmed the trial court's order denying the petition to compel on the ground that there was "no

preexisting relationship between the cross-complainants and either [the plaintiff] or Kaiser that could support any implied authority for [the plaintiff] or Kaiser to bind any of the cross-complainants by their arbitration agreement." (*Contra Costa*, at p. 243.)  In *Matthau*, the Court of Appeal held that the decedent's son could not be compelled to arbitrate the agreement at issue since he was neither a third party beneficiary to nor an assignee of that agreement.  (*Matthau*, at pp. 603-604.)  *Contra Costa* and *Matthau* are factually distinguishable from the present case since neither involved a motion to compel arbitration of an agreement that was executed by the real party in interest.

### E.  Procedural and Substantive Unconscionability

Respondent contends that the arbitration agreement is procedurally unconscionable because it was never signed by anyone.  She also contends that it is substantively unconscionable because it calls for prohibitively expensive fees, bars depositions, and ignores rules of evidence.

Unconscionability is also a defense to a motion to compel an arbitration agreement.  "As is true for any contract, an arbitration provision may be held unenforceable if it is unconscionable.  [Citations.]" (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851, fn. omitted.)  " '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results.  [Citation.]  'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'  [Citation.]  But they need not be present in the same degree.  'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.'  [Citations.]  In other words, the more substantively

oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114, abrogated on another ground in *AT&T Mobility LLC v. Concepcion* (2011) ___ U.S. ___, ___ [131 S.Ct. 1740, 1746].)

On appeal from the denial of a motion to compel arbitration, " '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an unconscionability determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.]" (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1144.) In the present case, the trial court did not determine any factual issues concerning conscionability or otherwise rule on the issue. Accordingly, we will remand to the trial court for a determination of whether the arbitration agreement is unconscionable.

### III.  Disposition

The order denying the motion to compel arbitration is reversed and remanded for further proceedings.  The parties shall bear their own costs.


_____
Mihara, J.


WE CONCUR:


_____
Premo, Acting P. J.


_____
Márquez, J.