Filed 3/30/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LORI DOUGHERTY, Individually and as Successor in Interest, etc., et al.,<br><br>        Plaintiffs and Respondents,<br><br>    v.<br><br>ROSEVILLE HERITAGE PARTNERS et al.,<br><br>        Defendants and Appellants. | C087224<br><br>(Super. Ct. No. 34-2017-00215283-CU-PO-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Kevin R. Culhane, Judge. Affirmed.

Beach Cowdrey Jenkins, LLP, Spencer H. Jenkins, and Darryl C. Hottinger for Defendants and Appellants.

Newman & Broomand LLP, Daniel S. Newman, Danny A. Barak, and Teresa M. Boyd for Plaintiffs and Respondents.

1

In January 2017, the 89-year-old father of plaintiffs Lori Dougherty and Julie Lee (collectively, plaintiffs) died while living in Somerford Place, an elder residential care facility owned and operated by defendants Roseville Heritage Partners, Somerford Place, LLC, Five Star Quality Care, Inc., and Five Star Quality Care-Somerford, LLC (collectively, defendants).  In July 2017, plaintiffs sued defendants, alleging elder abuse and wrongful death based upon the reckless and negligent care their father received while residing in defendants' facility.

Defendants appeal from the trial court's April 2018 order denying their motion to compel arbitration and stay the action, contending the arbitration agreement does not contain any unconscionable or unlawful provisions.  Alternatively, defendants argue the court abused its discretion by invalidating the agreement as a whole, rather than severing the offending provisions.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' father, who suffered from dementia, was admitted to Somerford Place in November 2016.  In the two weeks leading up to his admission, he was removed from two other residential placements due to "aggressive behaviors" and not being a "good fit."  Between these placements, plaintiffs' father had to stay in a local hospital.

Plaintiffs' father was scheduled to be released from the hospital the evening that Dougherty toured Somerford Place with its marketing director, Jennifer Deal.  During the 15- to 20-minute tour, Dougherty told Deal that Somerford Place was "the only feasible care option" for her father.  At the time, Dougherty had power of attorney for her father.

In Dougherty's affidavit opposing defendants' motion to compel arbitration, she stated that immediately after the tour, Deal presented her with 70 pages of admission documents.  Pages 43 through 45 of the packet contained an arbitration agreement (the Agreement).  Deal instructed Dougherty to sign the documents in the packet. Dougherty was "relieved" to have found a placement for her father; she was "crying" and "emotionally exhausted" as she signed the admission forms.  Deal did not inform

2

Dougherty that she could reject, negotiate or modify any of the documents, which were provided on preprinted forms. Dougherty therefore "did not believe that [she] could modify, negotiate, or refuse any part of the admission documents." Dougherty stated she did not learn she had signed an arbitration agreement until after she filed the complaint against defendants.

Shortly after Dougherty finished signing the admission packet, her father arrived via ambulance. Deal had to stay with him while Dougherty "hurried" to the hospital to retrieve her father's belongings.

Deal testified in deposition proceedings that she had never read the arbitration agreement in its entirety, nor had she received training on it. Although she did not review each paragraph of the arbitration agreement with a prospective resident, she would give a "general overview" that it was an arbitration agreement where both sides waived their rights to a jury trial, and both parties agreed to abide by the arbitrator's ruling. She would let a potential resident with questions about the agreement know that he or she could read it. Of the 20 or so signings she oversaw while working at Somerford Place, only one person had refused to sign the arbitration agreement. She did not say anything because it was not a mandatory document, and that individual eventually became a resident at the facility. Deal was unfamiliar with the American Arbitration Association (AAA) commercial rules (which must be followed under the Agreement), and she would not know where to direct someone to find a copy of the rules, especially since there was no copy at Somerford Place.

1. *The Agreement*

The Agreement states that all disputes between the parties with more than $25,000 at stake would be resolved through binding arbitration that was not subject to appeal. The arbitration panel would be composed of either one or three members, with the number to be chosen by the resident. The members of the panel would be chosen by the AAA or by mutual agreement by the parties. If a medical issue was "more likely than

not" to come before the panel, and the panel consisted of three members, one panel member would be a physician.

The panel would follow the current AAA commercial arbitration rules. The rules were not attached to the Agreement, and the Agreement failed to state where they could be found. The panel could direct discovery, including, per the AAA commercial rules, the exchange of documents between the parties. In addition, in exceptional cases and "upon good cause shown and consistent with the expedited nature of arbitration," the arbitrator had the discretion to order depositions. There was no provision in the rules for interrogatories or requests for admissions.

The panel could grant equitable relief and award economic and noneconomic damages, including for pain and suffering and mental anguish. However, the panel had "no authority" to award punitive or exemplary damages.

The parties were to bear equally the costs and expenses of any arbitration proceedings. However, if the resident supplied an affidavit stating an inability to pay such expenses, defendants would pay the resident's share of the costs and expenses. In such a situation, the defendants would acquire the right to choose whether the panel would be comprised of one or three arbitrators.

The parties waived their right in advance to a trial by jury for any claims, controversies, or disputes for which arbitration was not allowed by law. The Agreement was to be construed and enforced under the Federal Arbitration Act (FAA) and its provisions were severable, should any portion be declared unenforceable.

The Agreement also provided that it could be amended by the facility upon 30 days' written notice, and the resident would have 30 days upon receipt of the proposed amendment to terminate the agreement. Finally, each party agreed and acknowledged that it was entering into the Agreement voluntarily, had carefully read it, had asked any necessary questions, and had an opportunity to seek the advice of an attorney before signing it.

The Agreement was signed by Deal (on behalf of Somerford Place) and Dougherty (as her father's "authorized representative" under a power of attorney).

2.    *Trial court's denial of defendants' motion to compel arbitration*

In November 2017, defendants filed a motion to compel arbitration. Plaintiffs opposed the motion, arguing the Agreement was unconscionable and therefore unenforceable, and asked the court to strike the entire agreement. Plaintiffs argued the Agreement was *procedurally* unconscionable because it was "buried in the middle of" 70 pages of admission documents. Deal also did not go over the Agreement with Dougherty, and plaintiffs were not provided a copy of the AAA commercial rules which would govern the arbitration proceedings. Plaintiffs also pointed to a provision in the Agreement that allowed defendants to modify the Agreement on 30 days' notice. According to plaintiffs, if the resident did not agree with the modifications, the resident would then have to notify defendants of his or her intention to move out. In addition, plaintiffs argued, Dougherty was under considerable stress when she signed the documents and "was given no meaningful choice but to accept all terms presented by Deal *as they were*." (Original italics.)

Plaintiffs also argued the Agreement was *substantively* unconscionable because it "sharply curtail[ed]" plaintiffs' discovery rights. Although the governing AAA commercial rules allowed for document exchange, plaintiffs noted there was no provision allowing for form or special interrogatories, and depositions were only allowed in " 'exceptional cases . . . [and] upon good cause shown.' " According to plaintiffs, these restrictions were unfair because the Elder Abuse and Dependent Adult Civil Protection Act (the Act) (Welf. & Inst. Code, § 15600 et seq.) requires a plaintiff to "prove systematic elder abuse as opposed to isolated mistakes by a facility." Plaintiffs argued the discovery limitations would prevent them from investigating systematic abuse, including defendants' staffing practices, training, oversight, and regulatory compliance.

5

Plaintiffs also argued the Agreement unfairly prohibited any arbitration panel from awarding punitive or exemplary damages, even though such damages were available under the Act, and that the Agreement unfairly deprived them of the ability to seek attorney fees.

In addition, plaintiffs argued the Agreement unfairly hid the high cost of the AAA administrative fee schedule, which plaintiffs estimated would exceed $57,000. Finally, plaintiffs argued that defendants had waived their right to enforce the Agreement by breaching their promise to pay plaintiffs' share of the arbitration costs after plaintiffs provided an affidavit stating they could not afford the costs and expenses of arbitration.

After hearing argument, the trial court denied the motion to compel arbitration. By the time of the hearing, defendants had agreed to pay plaintiffs' share of the arbitration expenses, thus the court rejected plaintiffs' waiver argument. But the court ruled that the Agreement was procedurally unconscionable because it was part of a 70-page stack of documents that Dougherty lacked time to review because her father was arriving "imminently" in an ambulance after having been found not suitable for other facilities. Given the circumstances, the trial court did not find it dispositive that the Agreement was a separate document, or that the volume of documents was "necessitated" by statutory requirements. In addition, plaintiff was never told that she could modify, negotiate, or refuse to sign any of the admission documents. The court also noted that Dougherty did not even know there was an arbitration agreement until after the lawsuit was filed. The court found that plaintiffs had established that Dougherty had "no opportunity to negotiate the [A]greement."

The court further found the Agreement was substantively unconscionable because of its restrictions on discovery, limitations on damages, and advance waiver of jury trial rights for any nonarbitrable causes of action. The discovery provisions were particularly unconscionable in the context of plaintiffs' elder abuse claims because they "limit the statutory rights provided by the [Code of Civil Procedure] that are necessary to vindicate

the statutory rights provided by the Elder Abuse Act." Because the contract was "permeated with unconscionable provisions," the court declined defendants' request to sever the offending provisions and instead declared the entire Agreement void.

DISCUSSION

I

Defendants argue that the trial court erred in finding the Agreement to be both procedurally and substantively unconscionable and therefore unenforceable. Alternatively, defendants argue that the trial court abused its discretion in invalidating the Agreement rather than simply severing the offending provisions.

Arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) California and federal law each favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 97 (*Armendariz*).) However, we will not enforce an arbitration agreement that functions as an advance waiver of a claimant's statutory rights. (*Id.* at pp. 99-100.) If an arbitration agreement contains provisions that are unconscionable, courts may (1) refuse to enforce the agreement or (2) sever the offending provisions and enforce the remainder of the agreement. (*Id*. at p. 114.)

Unconscionability " ' "refers to ' "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." ' [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." ' " (*Baltazar v. Forever 21, Inc*. (2016) 62 Cal.4th 1237, 1243.) "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party

7

seeking to enforce them.  [Citation.]  The substantive element has to do with the effects of the contractual terms and whether they are overly harsh or one-sided.  [Citations.]"  (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853 (*Flores*), italics omitted.)

"The party resisting arbitration bears the burden of proving unconscionability.  [Citations.]  Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." '  [Citation.]  [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).)

The unconscionability of an arbitration agreement is a question of law that we review de novo, applying general principles of California contract law to determine the agreement's enforceability.  (*Carmona v. Lincoln Millennium Car Wash, Inc*. (2014) 226 Cal.App.4th 74, 82.)  To the extent the trial court relied on contested facts in making its determination, we review the court's factual determinations for substantial evidence.  (*Ibid*.)  We will only reverse a trial court's refusal to sever any unconscionable portions upon a showing of abuse of discretion.  (*Id.* at p. 83.)

1.    *Procedural unconscionability*

Defendants argue the Agreement was not procedurally unconscionable because it was incumbent upon Dougherty to read the contract before signing it, and there was no evidence that Somerford Place was the only option for plaintiffs' father.  Also, the Agreement was a separate document within the admission packet, and it was separately signed by Dougherty.  The Agreement explained the primary rights Dougherty would be giving up and contained a clause whereby Dougherty agreed that she was voluntarily entering into the Agreement.  Defendants also point to Deal's "practice" of telling

8

prospective residents that he or she does not have to sign the arbitration agreement, although they cite no evidence for this factual proposition.

In addition, according to defendants, it would be unfair to consider the size of the admission packet as evidence of procedural unconscionability because the Legislature requires facilities like Somerford Place to "provide an extensive amount of information in its admission agreement." Defendants further argue it would be unfair to refuse to enforce the Agreement when plaintiffs are seeking to enforce other admission documents. In addition, defendants argue that courts have made clear that the failure to attach any governing AAA rules does not render an arbitration agreement procedurally unconscionable, especially since Dougherty claimed she did not even realize she had signed an arbitration agreement at the time. Finally, defendants argue that a party has no affirmative duty to tell another party that the terms of a proposed agreement are negotiable. Defendants' contentions lack merit.

As courts have explained, the initial question regarding procedural unconscionability is whether the contract was one of adhesion, namely, a " 'standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra*, 24 Cal.4th at p. 113; see also *Pinnacle, supra*, 55 Cal.4th at p. 247 [" ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form" ' "]; *Cubic Corp. v. Marty* (1986) 185 Cal.App.3d 438, 449 ["[i]n the characteristic adhesion contract, the stronger party has drafted the contract and given the weaker party no opportunity to negotiate its terms and the weaker party may have no realistic opportunity to look elsewhere for a more favorable contract, but must adhere to the standardized agreement"].) "A finding of a contract of adhesion is essentially a finding of procedural unconscionability. [Citations.]" (*Flores, supra*, 93 Cal.App.4th at p. 853.)

For example, in *Flores*, the court found procedural unconscionability where a set of preprinted loan documents that included arbitration clauses was presented by defendant for plaintiffs' signature. (*Flores, supra*, 93 Cal.App.4th at pp. 849-850, 853-854.) The documents were cast in generic language, and the plaintiffs were never informed that the documents or arbitration provisions were negotiable. (*Id*. at p. 853.) The documents indicated that to establish the loan the plaintiffs sought, they had to sign the loan documents. In addition, the defendant's representative told the plaintiffs that defendant was the only company in California who offered the type of loan that the plaintiffs sought, indicating that the plaintiffs had "no real choice of alternate lenders." (*Ibid*.) Because the facts indicated the arbitration agreement was imposed upon the plaintiffs on a " 'take it or leave it' basis," the court concluded it was a contract of adhesion and therefore procedurally unconscionable. (*Id*. at p. 854.)

Similarly here, the arbitration agreement was provided on a preprinted form to Dougherty as part of a 70-page packet of admission documents for her father, who was being released from the hospital and needed to find a care facility that day. Although being pressed for sufficient time to thoroughly read and understand an arbitration agreement is not, standing alone, an indicator of procedural unconscionability (see *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 [a plaintiff may be bound by the provisions of an arbitration agreement " 'regardless of whether [she] read it or [was] aware of the arbitration clause when [she] signed the document' "]), the situation here was more complicated because two other facilities had already found Dougherty's father to be unsuitable. Dougherty communicated her family's predicament and her accompanying lack of bargaining power to Deal, telling Deal that Somerford Place was "the only feasible care option."

Although the admission documents may have been required by law to include multiple disclosures, the Agreement was still buried within the packet at pages 43 through 45. In addition, defendants failed to make available a copy of the governing

10

AAA commercial rules which contain the guidelines for the limited discovery available under the Agreement. (See, e.g., *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 690 [the failure to attach incorporated arbitration rules is not "by itself" sufficient to sustain a finding of procedural unconscionability, but it "could be a factor supporting a finding of procedural unconscionability where the failure would result in surprise to the party opposing arbitration"].) Despite Deal's testimony that the Agreement was not a "force[d]" (mandatory) document, Dougherty stated in her declaration that Deal instructed her to sign the admission documents. Dougherty perceived she did not have the ability to "modify, negotiate, or refuse any part of the admission documents."

Based on the adhesiveness of the agreement, and the oppression and surprise present, we conclude the trial court properly found the Agreement was imposed on a "take it or leave it" basis and evinced a high degree of procedural unconscionability. Under the sliding scale approach, only a low level of substantive unconscionability is therefore required to render the arbitration agreement unenforceable.

2.    *Substantive unconscionability*

Defendants first cite *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 [179 L.Ed.2d 742] for the proposition that the substantive unconscionability doctrine may not be invoked under the FAA, which governs the construction and enforcement of the Agreement. We disagree, given that *Concepcion* also held that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*Id.* at p. 339.)

Defendants next argue that a finding of substantive unconscionability is not supported by the factors considered by the trial court. According to defendants, courts have recognized that limited discovery rights are the hallmark of arbitration. Regardless, defendants assert, the AAA commercial rules provide for "significant discovery." Defendants next argue the jury trial waiver was not at issue because plaintiffs failed to

argue that any of their claims (elder abuse and wrongful death) were nonarbitrable. In addition, the cost-sharing provision was not at issue because (1) no costs had yet been incurred, and (2) defendants agreed to pay plaintiffs' share of the costs. Finally, defendants argue the modification provision was not substantively unconscionable because it allowed plaintiffs to terminate the Agreement within 30 days if they did not agree to the changes.

We agree with the trial court's conclusion that the Agreement was substantively unconscionable, particularly given the accompanying evidence of procedural unconscionability.

Plaintiffs allege a claim of neglect pursuant to the Act, which was "adopted to protect a particularly vulnerable portion of the population from gross mistreatment by adding heightened remedies to enable interested persons to engage attorneys to take up the cause of abused elderly persons." (*Benun v. Superior Court* (2004) 123 Cal.App.4th 113, 125.) These heightened remedies include attorney fees and costs for a winning plaintiff, damages for pain and suffering, and punitive damages. (Welf. & Inst. Code, § 15657; see also *Delaney v. Baker* (1999) 20 Cal.4th 23, 26; *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 529 [the Act provides for attorney fees, costs, and punitive damages under certain conditions].) To obtain the available remedies, a plaintiff "must demonstrate by clear and convincing evidence that [a] defendant is guilty of . . . reckless, oppressive, fraudulent, or malicious conduct." (*Delaney*, at p. 31; see also *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 405 [a plaintiff claiming elder abuse " 'must allege conduct essentially equivalent to conduct that would support recovery of punitive damages' "].)[1]

---

[1] To establish a claim for neglect under the Act, a plaintiff "must allege (and ultimately prove by clear and convincing evidence) facts establishing that the defendant (1) had responsibility for meeting the basic needs of the elder or dependent adult, such as

12

As courts have noted, "[t]he denial of adequate discovery in arbitration proceedings leads to the de facto frustration of" statutory rights such as claims brought under the Act. (*Armendariz, supra*, 24 Cal.4th at p. 104.) In addition, an arbitration agreement "may not limit statutorily imposed remedies such as punitive damages and attorney fees." (*Id.* at p. 103; see also *Bickel v. Sunrise Assisted Living* (2012) 206 Cal.App.4th 1, 12-13 [waiver in residency agreement of plaintiff's statutory remedies under the Act unenforceable as contrary to public policy].)

We agree with the trial court that the discovery limitations here unfairly and unreasonably favor defendants. As operators of an elder residential care facility, it is foreseeable that defendants would face suits under the Act such as the one brought by plaintiffs. Even though the law requires plaintiffs to establish their elder abuse claims under the clear and convincing evidence standard, the governing AAA commercial rules only permit depositions in "exceptional cases" at the discretion of the arbitrator, upon a showing of good cause, and "consistent with the expedited nature of arbitration." It is unclear whether an arbitrator would consider plaintiffs' case to be "exceptional" with sufficient "good cause" to warrant depositions. In addition, although the arbitrator has authority to require document discovery, there is no provision for interrogatories or

---

nutrition, hydration, hygiene or medical care [citations]; (2) knew of conditions that made the elder or dependent adult unable to provide for his or her own basic needs [citations]; and (3) denied or withheld goods or services necessary to meet the elder or dependent adult's basic needs, either with knowledge that injury was substantially certain to befall the elder or dependent adult (if the plaintiff alleges oppression, fraud or malice) or with conscious disregard of the high probability of such injury (if the plaintiff alleges recklessness) [citations]. The plaintiff must also allege (and ultimately prove by clear and convincing evidence) that the neglect caused the elder or dependent adult to suffer physical harm, pain or mental suffering. [Citations.] Finally, the facts constituting the neglect and establishing the causal link between the neglect and the injury 'must be pleaded with particularity,' in accordance with the pleading rules governing statutory claims. [Citation.]" (*Carter v. Prime Healthcare Paradise Valley LLC, supra*, 198 Cal.App.4th at pp. 406-407.)

requests for admissions.  These discovery restrictions run the risk of frustrating plaintiffs' statutory rights under the Act.  (See *Armendariz, supra*, 24 Cal.4th at p. 104 ["[t]he denial of adequate discovery in arbitration proceedings leads to the de facto frustration of" statutory rights such as claims brought under the Act].)

Defendants cite *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677 for the proposition that no "case . . . has ever held that an arbitration provision is substantially unconscionable merely because a party's discovery rights are limited in arbitration.  Limited discovery rights are the hallmark of arbitration." (*Id.* at p. 689.)  In fact, courts have made clear that limited discovery rights may be substantively unconscionable, especially in the context of statutory claims.  (See *Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 730 [employment arbitration guidelines, which set default limitations on discovery that may be conducted in preparation for arbitration, but which granted arbitrator right to expand discovery " 'for good and sufficient cause shown,' " were substantively unconscionable]; see also *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 716 [curtailment of discovery imposed by arbitration agreement fell short of minimum standards of fairness required for employee's vindication of public rights, where former employee sued for age discrimination in violation of the Fair Employment and Housing Act].)  Moreover, here the Agreement also limited plaintiffs' rights to recover remedies made available under the Act, including punitive damages and attorney fees.  (See *Armendariz, supra*, 24 Cal.4th at p. 103 [an arbitration agreement "may not limit statutorily imposed remedies such as punitive damages and attorney fees"].)  In addition, the Agreement required plaintiffs to waive in advance their right to a jury trial for any dispute for which arbitration is not allowed by law.  Regardless of whether plaintiffs have currently filed such a claim, our Supreme Court has made clear that predispute contractual jury trial waivers are unenforceable under California law.  (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 961 ["Resolving any ambiguity in favor of preserving the right to jury trial, as we must, we

14

conclude [Code of Civil Procedure] section 631 does not authorize predispute waiver of that right"].)

Under the circumstances, we find that the Agreement was substantively unconscionable.

3. *The trial court did not abuse its discretion in denying severance*

In their briefing, and at oral argument, defendants asserted that even if the Agreement contained provisions that are procedurally or substantively unconscionable, the proper remedy was to sever those provisions, not invalidate the entire agreement. We find no abuse of discretion.

A trial court may refuse to enforce an arbitration agreement if it is permeated by unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at p. 122.) "One relevant factor in assessing severability is whether the agreement contains more than one objectionable term. [Citation.]" (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 666.) " 'An arbitration agreement can be considered permeated by unconscionability if it "contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [employer's] advantage." [Citations.]' " (*Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1149.)

Given our conclusion that the Agreement suffered from multiple defects rendering it procedurally and substantively unconscionable, we further conclude that the trial court did not abuse its discretion in finding that the Agreement was "permeated with unconscionable provisions," and therefore refusing to simply sever the offending clauses.

15

## DISPOSITION

The order is affirmed.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


      KRAUSE      , J.


We concur:


      MURRAY      , Acting P. J.


      HOCH      , J.